*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0147p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ALBERTO RODRIGUEZ BENITEZ,
　　　　　　　　　*Petitioner-Appellant,*

　　　*v.*

　　　　　　　　　　　　　　　No. 05-2484

UNITED STATES OF AMERICA,
　　　　　　　　　*Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
Nos. 03-00088; 04-00627—Robert Holmes Bell, Chief District Judge.

Submitted: March 11, 2008

Decided and Filed: April 9, 2008

Before: KEITH, CLAY, and GILMAN, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Christopher P. Yates, YATES, LaGRAND & DENENFELD, Grand Rapids, Michigan, for Appellant. B. Rene Shekmer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

　　　RONALD LEE GILMAN, Circuit Judge. Alberto Rodriguez Benitez pled guilty to one count of conspiracy to distribute more than 100 grams of marijuana and one count of conspiracy to launder money. He was subsequently sentenced to two concurrent terms of 120 months of imprisonment, four years of supervised release, a $10,000 fine, and a $200 special assessment. Benitez did not pursue a direct appeal. He did, however, file a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Benitez raised five grounds for relief, all of which related to his counsel's performance at sentencing and to the sentence itself. One of the claims raised by Benitez was that he was denied his Sixth Amendment right to counsel during the sentencing hearing.

　　　The district court dismissed Benitez's § 2255 motion on the basis that the motion was not timely filed, but did not consider whether Benitez was entitled to equitable tolling. In any event, the court did not rest its decision on the lack of timeliness. It instead proceeded to explain why Benitez's claims were without merit. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

1

## I. BACKGROUND

### A.     Factual background

In May of 2003, Benitez pled guilty to one count of conspiracy to distribute more than 100 grams of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(vii), and one count of conspiracy to launder money, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h). Benitez's sentencing hearing took place in August of 2003. Although there was no interpreter present at Benitez's plea hearing, an interpreter was on hand at his sentencing hearing in case Benitez did not understand something that was said.

At the sentencing hearing, the district court considered the government's motion for a downward departure based on Benitez's cooperation in the investigation of the drug conspiracy in which he participated. The government outlined the testimony that Benitez had given at the trial of two coconspirators. Benitez's attorney, John Beason, was then asked if he wished to be heard. Beason replied: "Your honor, before I—I would inform the Court that I was told last night that I was fired from this case and he wished me not to represent him any longer. So am I to still speak on his behalf if the Court knows that fact?" The court responded by asking Benitez how he wished to proceed. After Benitez conferred with the interpreter, the interpreter said that Benitez did not want Beason to represent him. Benitez also declined to speak for himself, indicating through the interpreter that "he felt very upset, very nervous."

The district court then asked whether Benitez wanted Beason "to speak on [his] behalf at this time." Benitez replied "no," and his interpreter followed up by stating: "Well, he can speak, but I don't want him to represent me any longer." The court explained that by speaking, "he would be representing you and telling what's good about you and your position here." Benitez responded through the interpreter, saying: "No, I do not want him to represent me."

The court then asked Beason to remain where he was, and addressed Beason directly: "I want you here for just a little while longer. I want the record to reflect that you were on your feet and you were prepared to make comments, presumably—may I presume that they were in support of the government's motion for a downward departure for your client?" Beason replied: "Very much so, Your Honor."

The district court proceeded by granting the government's downward-departure motion. It then asked Benitez if he wanted to say anything on his own behalf before the court imposed the actual sentence. Benitez said: "I don't feel good. I can't speak." At this point, the following colloquy between the court and Benitez took place:

> THE COURT: You do not wish Mr. Beason to speak on your behalf; is that right?
> DEFENDANT BENITEZ: Am I going to get sentenced still even though he won't represent me?
> . . . .
>
> THE COURT: Right, right.
> DEFENDANT BENITEZ: Might as well just have him speak for me, then.
> THE COURT: You might as—excuse me?
> THE INTERPRETER: Go ahead and have him speak for me. Go ahead and have him speak for me.

The district court concluded the hearing by sentencing Benitez to two 120-month terms of imprisonment, to be served concurrently, in addition to four years of supervised release, a $10,000

fine, and a $200 special assessment. Beason then requested that he be relieved from representing Benitez on appeal, reasoning that "if he should choose to appeal I know . . . he's going to allege ineffective assistance of counsel." The court granted the request, but also stated: "I want the record to reflect that you have, with Mr. Benitez's permission, spoken on his behalf, accepted the papers, and turned those papers over to him and executed your responsibilities as Mr. Benitez permitted you in this proceeding this morning." At this point, the following exchange occurred:

> THE COURT: Is that correct, Mr. Benitez?
> MR. BEASON: You have to answer yes.
> DEFENDANT BENITEZ: Yes.

## B.      Procedural background

Benitez did not pursue a direct appeal. But on September 17, 2004, acting through counsel, he filed a motion for relief from judgment pursuant to 28 U.S.C. § 2255. Benitez argued that (1) he was deprived of his Sixth Amendment right to counsel during the sentencing hearing, (2) he received ineffective assistance of counsel "during the phase of the sentencing hearing for which he had counsel," (3) he was deprived of his Fifth Amendment right to due process of law when the district court imposed a sentence while operating under a misapprehension of law, (4) his sentence was calculated in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), and (5) he received ineffective assistance of counsel because Beason failed to file a timely notice of appeal.

The district court denied Benitez's motion on the basis that the same was barred by the one-year statute of limitations contained in 28 U.S.C. § 2255. It also noted that "even if [it] were to consider the merits of Benitez's claims for relief, the motion would be denied." With respect to Benitez's claim that he was denied the right to counsel during his sentencing hearing, the district court concluded that although "the record evidences some confusion on Benitez's part as to his counsel's role at sentencing, there is no evidence that he was without counsel during the proceeding." The court further determined that all of Benitez's other claims for relief were "completely without merit."

Benitez subsequently filed a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, contending, among other things, that he was entitled to equitable tolling based on the failure of his counsel to timely file his § 2255 motion. The district court denied the motion, concluding that "even assuming equitable tolling applies, the outcome of the case does not change" because Benitez's claims lacked merit. Nevertheless, the court issued a COA on Benitez's right-to-counsel claim. This court subsequently declined to expand the COA as to Benitez's claim that he received ineffective assistance of counsel when Beason failed to file a notice of appeal after Benitez was sentenced. Benitez's claim regarding his right to counsel during his sentencing hearing is thus the sole issue presently before us.

## II. ANALYSIS

## A.      Statute of limitations

A motion filed pursuant to 28 U.S.C. § 2255 is subject to a one-year statute of limitations, with the limitations period beginning to run "from the latest of" four possible dates. The only two that are potentially relevant in the present case are

> the date on which the judgment of conviction becomes final; [or] the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . .

28 U.S.C. § 2255(f)(1)&(3).

Although Benitez's claim based on *Blakely v. Washington*, 542 U.S. 296 (2004), is not before us, we note that any sentencing claim would now be governed by *United States v. Booker*, 543 U.S. 220 (2005). Moreover, *Booker* has not been made retroactively applicable to cases on collateral review. *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005).

Benitez's judgment became final on September 15, 2003, the date that marked the expiration of the 10-day time period (plus intervening weekends and a federal holiday) when he could have filed a timely appeal of his August 29, 2003 judgment and commitment order. *See* Fed. R. App. P. 4(b)(1); *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (concluding that, as a general matter, the time limitation for appealing a criminal judgment contained in Rule 4(b)(1) of the Federal Rules of Appellate Procedure governs when a judgment of conviction becomes final for the purposes of 28 U.S.C. § 2255(f)(1)). Benitez filed his § 2255 motion on September 17, 2004, two days after the limitations period lapsed. The district court therefore determined that Benitez's motion was untimely.

As the government points out, the district court's "primary ruling of time barred has never been found to be in error." Neither the parties nor the district court, however, addressed the merits of whether Benitez is entitled to equitable tolling, despite its availability where a motion to vacate is filed after the one-year limitations period contained in 28 U.S.C. § 2255. *See Dunlap v. United States*, 250 F.3d 1001, 1004-05 (6th Cir. 2001) (holding that § 2255(f) is not jurisdictional in nature and that equitable tolling is therefore available). The district court instead concluded that Benitez would not be entitled to relief even if it assumed that equitable tolling applied. Nevertheless, it issued a COA on the issue of whether Benitez was denied the right to counsel at his sentencing hearing.

If Benitez's right-to-counsel claim were clearly without merit, we could ignore the fact that his § 2255 motion was untimely filed. *See Pough v. United States*, 442 F.3d 959, 965 (6th Cir. 2006) (concluding that the equitable-tolling analysis can be bypassed where the merits of a case "can be resolved in a straightforward manner and will also result in the denial of [the § 2255] motion"). But as discussed below, we do not believe that Benitez's right-to-counsel claim can be so easily disposed of on the merits.

## B.      Right to counsel

### 1.      *Standard of review*

"A prisoner in custody under sentence of a [federal] court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). We review a district court's denial of a § 2255 motion de novo, but examine its findings of fact under the clearly erroneous standard of review. *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003).

A defendant facing the possibility of incarceration has a Sixth Amendment right to counsel at all "critical stages" of the criminal process, and a sentencing hearing is one type of "'critical stage[]' at which the right to counsel attaches." *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006) (quoting *United States v. Wade*, 388 U.S. 218, 224 (1967)). The right to counsel can be waived, but only where such waiver is "knowing, voluntary, and intelligent." *Id.* (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A violation of a defendant's right to counsel at a critical stage is a structural error, and is therefore not subject to an analysis of whether the error was harmless or prejudicial. *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2566 (2006) (concluding that a Sixth Amendment violation of the right to counsel of choice "is not subject to harmless-error analysis"); *United States*

*v. Barnett*, 398 F.3d 516, 526 (6th Cir. 2005) (noting that a defendant is not required to demonstrate prejudice when there is a "structural error," such as a violation of the right to counsel).

Benitez argues that he was denied the right to counsel because, despite having expressed dissatisfaction with Beason and informing the district court that he did not want Beason to represent him, the district court failed to "ascertain the basis for Mr. Benitez's dissatisfaction." He also claims that Beason "abdicated his responsibility to comment on the government's downward departure motion," and that the district court erred by failing to "take steps to ensure that Mr. Benitez was assisted by counsel in making an argument for a more extensive downward departure."

In response, the government contends that Benitez "had counsel with him during the entire sentencing proceeding," and that Beason was "fully prepared to . . . address each of the items relative to sentencing, including the [government's downward-departure motion]." The government thus contends that Benitez's right to counsel is not even at issue in the present case. It instead frames the "real issue" as whether Benitez "has a right to make his own decisions and to determine when his counsel will or will not speak on his behalf." In reviewing Benitez's § 2255 motion, the district court took a similar view:

> It is . . . beyond question that Benitez had counsel during the sentencing phase of his proceeding. Benitez's counsel was prepared and willing to speak on Benitez's behalf regarding the downward departure motion, however, when called upon to do so, Benitez prevented his counsel from speaking and asked that his counsel be discharged. Benitez did not indicate that he wanted new counsel, never asked the Court to appoint another attorney, never asked to represent himself, and did not ask for an adjournment to find another counsel. . . . While the record evidences some confusion on Benitez's part as to his counsel's role at sentencing, there is no evidence that he was without counsel during the proceeding.

Contrary to the district court's analysis, we do not believe that the fact that Beason was present at the sentencing hearing and "prepared and willing to speak on Benitez's behalf" is dispositive of Benitez's claim. We note, moreover, that the facts of this case do not fit comfortably within the various strands of existing Sixth Amendment jurisprudence. In particular, what makes this case unique—and therefore hard to categorize—is that Benitez (1) was represented by privately retained as opposed to court-appointed counsel (although some evidence in the record suggests that he may have actually been eligible for a court-appointed attorney), (2) did not affirmatively request new counsel or to represent himself, but did clearly state at the beginning of the hearing that he did not want Beason to represent him, and (3) at a later point in the hearing authorized Beason to speak on his behalf. These facts, when taken together, led both the government and the district court to conclude that Benitez's right to counsel was not implicated.

The district court, however, failed to recognize that the Sixth Amendment *is* implicated where a criminal defendant seeks to change the status of his representation. This kind of "change" of status usually arises in one of two ways: (1) a defendant seeks to invoke his right to self-representation, *see, e.g.*, *United States v. McBride*, 362 F.3d 360, 366 (6th Cir. 2004) (concluding that the defendant had successfully invoked the right to self-representation where he knowingly and intelligently waived the right to counsel), or (2) a defendant seeks to substitute his counsel, *see, e.g.*, *United States v. Green*, 388 F.3d 918, 922 (6th Cir. 2004) (holding that a defendant's "persistent, unreasonable demand for dismissal of counsel and appointment of new counsel functioned as a valid waiver of the right to counsel").

### 2.          *Self representation*

A defendant seeking to assert his right to self-representation must take affirmative steps to apprise the court of his desire to proceed in this manner. *United States v. Cromer*, 389 F.3d 662, 682 (6th Cir. 2004) (holding that the district court was not required to warn the defendant about the consequences of waiving the right to counsel where the defendant personally participated in the cross-examination of a witness but "continued to receive substantial assistance of counsel," concluding that a defendant must "clearly and unequivocally assert[] his right to proceed *pro se*"). When a defendant does so, the court is then required to determine whether the attempted waiver of the right to counsel is knowing and intelligent. *McBride*, 362 F.3d at 366 (reiterating the well-established principle that where a district court "is faced with an accused who wishes to represent himself, the court must ask the defendant a series of questions" and should "make an express finding on the record that the accused has knowingly and voluntarily waived his right to counsel").

The record in the present case clearly demonstrates that Benitez did not attempt to waive his right to counsel by requesting self-representation. To the contrary, Benitez repeatedly declined to address the court on his own behalf, stating that he did not feel well or that he was too nervous. *Cf. Brewer v. Williams*, 430 U.S. 387, 404 (1977) (noting that courts must "indulge in every reasonable presumption against waiver" of the right to counsel). This court's cases addressing the right to self-representation are therefore inapplicable in the present case.

### 3.          *Substitution of counsel*

As with an assertion of the right to self-representation, a defendant wishing to substitute counsel must "bring any serious dissatisfaction with counsel to the attention of the district court." *United States v. Iles*, 906 F.2d 1122, 1131-32 (6th Cir. 1990) (requiring the defendant to "show his hand" by alerting the district court of his desire to substitute counsel). Once a defendant does so, the district court is obligated to inquire into the defendant's complaint and determine whether there is good cause for the substitution. *Id.* at 1131 ("It is hornbook law that when an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction with his current counsel." (alterations and internal quotation marks omitted)).

Thus, where a court is faced with a defendant's request to effect a change in his representation by way of a motion to substitute counsel, the court must determine whether there is good cause for the substitution by balancing "the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996) (concluding that the district court did not abuse its discretion in denying motions to substitute counsel raised by codefendants one day before the trial was set to begin). Appellate courts reviewing the denial of such a motion "generally consider the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *Iles*, 906 F.2d at 1130 n.8.

The record here makes clear that, as the district court noted, "Benitez did not indicate that he wanted new counsel, never asked the Court to appoint another attorney, never asked to represent himself, and did not ask for an adjournment to find another counsel." But Beason's first statement to the court was that "I was told last night that I was fired from this case and [Benitez] wished me not to represent him any longer." The district court responded to Beason's remark by asking Benitez "what is your pleasure here?", at which point Benitez confirmed that he did not want Beason to represent him.

This leads to the question of whether, in the absence of an affirmative request to substitute counsel or for additional time to seek new counsel, the district court was obligated to inquire further to discover the source of Benitez's dissatisfaction. Benitez asserts that the court was required to make such an inquiry, and that its failure to do so resulted in a violation of his right to counsel. On this score, he relies on *Iles*, 906 F.2d at 1131, for the proposition that "a district court usually must engage a defendant in person where he has expressed dissatisfaction with counsel and has sought to have him removed."

The defendant in *Iles* had retained an attorney to represent both himself and his codefendant wife in a tax-fraud case. *Id.* at 1123. Their attorney later moved to withdraw as counsel because of a conflict of interest that arose during plea negotiations. At the hearing on the motion, the attorney advised the district court that the couple had told him that they were financially unable to meet the fee arrangement, and also that he and Iles had "serious differences of opinions" with respect to how to prepare for trial. *Id.* at 1129. The district court subsequently removed the attorney from representing the wife and, to avoid the fee-arrangement problem, appointed the same attorney to represent Iles at the government's expense. *Id.* at 1129-30. Iles was present at the hearing and did not object to the resolution of the issue. *Id.* at 1130.

On appeal, Iles claimed that he had been denied the right to counsel because the district court failed to inquire into the source of his dissatisfaction with his attorney. *Id.* This court, however, rejected Iles's argument because he had never actually expressed dissatisfaction with his counsel. As the court explained:

> At no point did Iles try to "fire" his counsel, ask for new counsel, or suggest that he wished to conduct his own defense. Since the district court was not put on notice that Iles was dissatisfied with counsel and wished to have him removed or to have new counsel, the district court had no duty to inquire. The need to bring any serious dissatisfaction with counsel to the attention of the district court was particularly necessary here since Iles initially retained [counsel], thus affirmatively demonstrating his initial confidence in [his lawyer].

*Id.* at 1131-32 (citations omitted).

The government argues that *Iles* is inapposite because, although the attorney in that case was initially privately retained, the principles enunciated apply only to cases involving the substitution of appointed counsel. It therefore contends that *Iles* should be read as an elaboration on the burden that an *indigent* defendant bears in demonstrating "good cause" for the substitution.

The government is correct that *Iles*, by its terms, addressed the appropriate standards for inquiring about an indigent defendant's basis for attempting to substitute appointed counsel. *See Iles*, 906 F.2d at 1130 (affirming the principle that "when an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction with his current counsel" (alteration omitted)). But this reading ignores the more general principle underlying *Iles*, which is that where a district court is on notice of a criminal defendant's dissatisfaction with counsel, the court has an affirmative duty to inquire as to the source and nature of that dissatisfaction—regardless of whether the attorney is court-appointed or privately retained. *See Cottenham v. Jamrog*, 248 F. App'x 625, 636 (6th Cir. 2007) (holding, in a habeas case, that a criminal defendant's right to counsel was denied where the state court failed to promptly grant a hearing to investigate the defendant's repeated objections to representation by an attorney that the defendant's family had retained and paid to work on the defendant's appeal).

In sum, appropriate judicial inquiry is triggered only when the defendant apprises the court of his desire to effect a change in representation by way of "a motion, or something that approximates such a motion." *Iles*, 906 F.2d at 1131 n.8. We must therefore determine whether Benitez's statements at the beginning of his sentencing hearing were sufficient to bring his dissatisfaction to the attention of the district court, thus triggering the court's affirmative duty to inquire.

Benitez argues that *Iles* is dispositive of his right-to-counsel claim, and we agree. His failure to explicitly request a new attorney does not negate the conclusion that his statements were sufficient to trigger the district court's obligation to inquire into his dissatisfaction with Beason. Unlike the defendant in *Iles*, who failed to give any indication to the court that he was not pleased with his counsel's performance, both Benitez and Beason informed the district court that Benitez had "fired" Beason and that Benitez did not want Beason to represent him. These statements were sufficient to "bring any serious dissatisfaction with counsel to the attention of the district court." *See Iles*, 906 F.2d at 1132; *see also id.* (distinguishing *Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970), a case where the defendant had filed four motions for new counsel and stated his dissatisfaction with his attorney in open court, but also noting that "[a] defendant, of course, need not go to these lengths to obtain a colloquy with the court on his dissatisfaction").

The district court properly recognized that the record evidences Benitez's confusion about the role of his attorney at the sentencing hearing. But that confusion seems to have been grounded in the scope of his right to counsel, not in whether he wanted Beason to represent him. For example, in responding to a question by the district court ("[Y]ou do not want Mr. Beason to speak on your behalf at this time?"), Benitez stated that Beason could "speak, *but I don't want him to represent me any longer*." (Emphasis added.) The district court, moreover, acknowledged that Benitez *did* "ask that his counsel be discharged." That Benitez—a lay person whose first language is Spanish, not English—failed to invoke the "magic words" by requesting a new attorney should not be interpreted as an implicit repudiation of his express, repeated statements that he did not want Beason to represent him. *Cf. United States v. Proctor*, 166 F.3d 396, 403 (1st Cir. 1999) ("[T]he triggering statement in a defendant's attempt to waive his right to counsel need not be punctilious; rather, the dialogue between the court and the defendant *must result* in a clear and unequivocal statement." (emphasis in original)).

Furthermore, the fact that Benitez permitted Beason to speak on his behalf at a later point in the sentencing hearing does not undermine our conclusion that the district court failed to appropriately respond to Benitez's initial indication that he did not wish Beason to represent him. Rather, the exchange between Benitez and the district court serves to underscore Benitez's confusion about the scope of his right to counsel:

> THE COURT: You do not wish Mr. Beason to speak on your behalf; is that right?
> DEFENDANT BENITEZ: Am I going to get sentenced still even though he won't represent me?
> . . . .
>
> THE COURT: Right, right.
> DEFENDANT BENITEZ: Might as well just have him speak for me, then.
> THE COURT: You might as—excuse me?
> THE INTERPRETER: Go ahead and have him speak for me. Go ahead and have him speak for me.

The district court described this colloquy as Benitez "request[ing] that his counsel . . . speak on his behalf." Although this may be true in the most literal sense, it does little more than demonstrate that the district court was not inclined to delay the proceedings to inquire into Benitez's dissatisfaction with Beason's representation. Benitez and Beason had earlier informed the court that Benitez did not wish to be represented by Beason. Those statements triggered the court's obligation to inquire further. Benitez's subsequent grant of permission for Beason to speak (after the court made clear that this would be Benitez's only possibility of representation) did not provide a remedy for the court's prior failure to engage in a colloquy with Benitez. Nor was Benitez's forced acquiescence ("You have to answer yes") in the court's self-declared interpretation of the record a waiver of his rights. The court thus failed to ensure that Benitez's Sixth Amendment right to counsel of his choice was adequately protected.

This is not to say, of course, that the district court would have been required to permit Benitez to substitute counsel or to delay the sentencing hearing. See *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2565-66 (2006) (concluding that the defendant's Sixth Amendment right to counsel of his choosing was violated, but acknowledging that that right is not absolute and recognizing that courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar"). As discussed above, we review a district court's denial of a motion to substitute counsel for an abuse of discretion, considering "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *Iles*, 906 F.2d at 1130 n.8.

Had the district court inquired into Benitez's statements and made explicit findings, we could consider whether the court properly exercised its discretion in refusing to postpone the proceedings. But the record in this case simply does not allow for such an inquiry. *See United States v. Thomas*, No. 98-3851, 225 F.3d 660, 2000 WL 799340, at *2 (6th Cir. June 8, 2000) (unpublished) (remanding the case where the record did not make clear that, in denying the defendant's motion to substitute counsel, the district court had discharged its "obligation to inquire" into the factors that must be considered when balancing defendant's right to counsel against administrative concerns).

We therefore conclude that Benitez's statements were sufficient to trigger the district court's duty to inquire into the source and nature of Benitez's dissatisfaction, and that the court's failure to do so violated his Sixth Amendment right to counsel. Because Benitez's § 2255 petition was untimely filed in the absence of equitable tolling, we will remand the case to the district court for a determination of whether Benitez is entitled to such tolling. If he is, then the district court will need to resentence Benitez at a hearing where there is no dispute about him being properly represented by counsel.

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.