**NOT RECOMMENDED FOR PUBLICATION**
File Name: 11a0102n.06

**No. 09-5916**

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED**<br>**Feb 10, 2011**<br>LEONARD GREEN, Clerk |

| | | |
|---|---|---|
| CAROLYN BURDETTE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

Before: SILER, MOORE, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge. A jury convicted Carolyn Burdette of conspiracy to murder her husband Randy. After this court affirmed her conviction and sentence on direct appeal, Burdette filed a petition under 28 U.S.C. § 2255 to vacate her sentence. The district court denied her petition and she now appeals. For the following reasons, we **AFFIRM**.

**BACKGROUND**

After Burdette's husband Randy joined the military, the couple was stationed in Texas where they became acquainted with Army Sergeant Steve Adams. For some period of time between 1991 and 2000, Adams and Burdette maintained a romantic relationship. Eventually, Burdette sought Adams's help to kill her husband. After attempting unsuccessfully to kill Randy, at Burdette's insistence, Adams asked Michael Myott, a fellow serviceman and sniper, to kill Randy. Myott reported the solicitation to John Massie, who arranged for a sergeant to contact and meet with

Adams, posing as a hitman. Adams's efforts failed because, unknown to both Burdette and Adams, Massie was an undercover Army Special Agent investigating the murder plot. Adams was tried and convicted by a military court for his role in the conspiracy.

Burdette was charged with conspiracy to commit murder-for-hire and with the use of interstate facilities to commit murder-for-hire, in violation of 18 U.S.C. § 1958. At trial, in addition to Adams's testimony, the government also produced a number of letters sent by Burdette to Adams. These letters reflected the romantic relationship between Burdette and Adams, and one letter contained a coded reference to Burdette's plan to kill her husband. Also at Burdette's trial, Julie Neuman and her husband John, acquaintances of the Burdettes, testified that Burdette admitted to having a relationship with Adams. Both also testified to hearing Burdette and Adams discuss possible ways to kill Randy. Finally, Massie testified that he contacted Burdette, portraying the hit man hired by Adams to kill Randy. Burdette and Massie discussed possible ways to kill Randy, and Burdette supplied Massie with her husband's likely location and the vehicle he would be driving.

Burdette testified at trial that her relationship with Adams was not consensual. She claimed that Adams had raped her and that she was the victim of Adams's delusional obsession. Burdette denied ever knowing that Adams had attempted to have Randy killed. Burdette was convicted on both counts and the district court sentenced her to 151 months' imprisonment. On direct appeal, we affirmed Burdette's conviction and sentence. *United States v. Burdette*, 86 F. App'x 121 (6th Cir. 2004).

Burdette then filed this motion pursuant to 28 U.S.C. § 2255 to vacate her sentence. She argued that she was denied the effective assistance of counsel at trial because her counsel failed to obtain certain impeachment evidence for use against Adams. In support, Burdette submitted the

testimony of Dr. Joan Schleicher at Adams's military sentencing hearing. Dr. Schleicher, a psychologist, concluded that Adams suffered from a "schizoid personality disorder" and that he possessed "deep, delusional beliefs about his role in the world." As a result, Dr. Schleicher found that Adams was unable to properly "weigh what[] [was] happening in his relationship with [Burdette], or what[] [was] not happening." Adams fantasized himself to be Burdette's rescuer. Dr. Schleicher concluded, however, that Adams was able to distinguish right from wrong and did not suffer from hallucinations.

By the time of Burdette's trial, Adams had already been sentenced for his role in the conspiracy, and Dr. Schleicher's testimony would have been available for Burdette's use. Despite his close contact with Adams's military counsel, Burdette's trial counsel failed to obtain Dr. Schleicher's testimony. Burdette's trial counsel could not explain why he failed to do so, but concluded that the testimony would have been helpful, both to impeach Adams and to support the defense's theory that Burdette was the victim of violent treatment by Adams. The district court held that the failure by Burdette's counsel to obtain this impeachment evidence constituted deficient performance but that the error did not prejudice Burdette. Accordingly, the district court denied Burdette's § 2255 motion.

## DISCUSSION

We review a district court's denial of a § 2255 motion *de novo*, but review the district court's findings of fact for clear error. *Benitez v. United States*, 521 F.3d 625, 630 (6th Cir. 2008).

Burdette argues that the failure by her trial counsel to obtain Dr. Schleicher's testimony created sufficient prejudice such that, with the inclusion of this testimony, the outcome of her trial would have been different. Whether a defendant is deprived of the effective assistance of counsel

is determined under the two-pronged *Strickland* test. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because the district court found deficient performance, but not prejudice, we address only the second prong of the *Strickland* inquiry.

To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." *Id.*

Burdette argues that, with Dr. Schleicher's testimony, a reasonable jury could have discounted Adams's testimony as delusional—supporting her defense that Adams raped her—or concluded that she and Adams shared a consensual affair but that Adams erroneously believed that Burdette asked him to kill Randy. The amount and substance of other evidence admitted at Burdette's trial, however, in addition to Dr. Schleicher's testimony, prevents us from reaching any conclusion other than that this impeachment evidence would not have altered the outcome of Burdette's trial.

Dr. Schleicher's testimony would not have altered the trial's outcome because it would not necessarily have discredited Adams's testimony. As the district court observed, Dr. Schleicher's testimony was a double-edged sword. Dr. Schleicher concluded that Adams did not suffer from hallucinations and she considered him to be "a truthful, honest guy." While Adams may have been delusional, Dr. Schleicher testified that it was *Burdette* who manipulated an unstable Adams. The other evidence at trial further bolstered Adams's testimony. The letters sent by Burdette to Adams

evidenced that a romantic relationship existed between the two. Burdette concluded nearly every letter with the words "love and miss you" or "love always." In addition to Adams, two other witnesses at trial testified that Burdette herself admitted to the existence of a consensual, romantic relationship with Adams.

Furthermore, the ample amount of other evidence admitted at trial overwhelmingly proved Burdette's guilt, Dr. Schleicher's testimony notwithstanding. Julie and John Neuman both testified that they witnessed Adams and Burdette discuss various ways of killing Randy. Burdette's other letters also suggested her desire to have Randy killed. Burdette begged Adams to "please help me," and stated that she would be thankful "when this [was] ALL OVER." Finally, Burdette was recorded discussing the killing of her husband with a presumed hitman. Burdette suggested to Massie that deer hunting season would begin soon. Massie and Burdette discussed the number of hunting accidents that occurred each year, and Burdette provided Massie with the specific location where her husband would be hunting.

There was ample evidence to prove that Burdette participated in a conspiracy to have her husband killed. Dr. Schleicher's testimony fails to raise a reasonable probability that, with it, any juror could have possessed a reasonable doubt respecting Burdette's guilt. As a result, Burdette does not show the prejudice required to demonstrate that she was deprived of the effective assistance of counsel.

**AFFIRMED**.