STATE OF CONNECTICUT *v.* NATHAN S. JOHNSON
(AC 33535)

Alvord, Bear and Mihalakos, Js.

Argued October 22, 2012—officially released January 29, 2013

*Jennifer Bourn*, assistant public defender, for the appellant (defendant).

*Alanna Tynan*, certified legal intern, with whom were *Harry Weller*, senior assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, and *Eugene Calistro*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Nathan S. Johnson, appeals from the judgment of conviction, rendered following a jury trial, of carrying a pistol without a permit in violation of General Statutes (Rev. to 2009) § 29-35 (a), interfering with an officer in violation of General Statutes § 53a-167a (a) and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1).[1] On appeal, the defendant claims that he is entitled to a new

---

[1] The jury found the defendant not guilty of stealing a firearm in violation of General Statutes § 53a-212 (a).

trial because the court violated his state and federal right to counsel of his choice[2] and, additionally, abused its discretion by failing to conduct an inquiry when it learned that the defendant no longer wanted to be represented by his private attorney. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's claim. The defendant was arrested on April 12, 2010, and, in July, 2010, he hired private counsel. On December 29, 2010, the defendant filed a pro se motion for a speedy trial, asserting that he had been in custody since April 12, 2010; the motion was denied. On February 22, 2011, the defendant filed another motion for a speedy trial, asserting this time that he had been in custody since June 25, 2010. On February 28, 2011, the defendant's attorney filed a motion for a speedy trial,[3] and, on March 2, 2011, the court determined that jury selection would commence on March 7, 2011. During a hearing on March 7, 2011, the court stated that it understood that the defendant was electing to be tried by the court on the charge of criminal possession of a firearm, and counsel agreed with the court's understanding. The defendant, however, expressed some confusion about this election. In response, both defense counsel and the court explained that one of the elements of the § 53a-217 (a)

---

[2] Although the defendant claims that the court violated his rights under both the federal and the state constitutions, he has provided no separate analysis for his state constitutional claim. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim." (Internal quotation marks omitted.) *In re Melody L.*, 290 Conn. 131, 167–68, 962 A.2d 81 (2009). Accordingly, we decline to review the defendant's state constitutional claim.

[3] A copy of this motion does not appear in the record. The transcript of the March 2, 2011 hearing, however, reveals that the court had it in its possession.

(1) charge was proof of a prior felony conviction, and, that if the defendant wanted to keep the prior felony conviction from the jury, he could elect to have this charge considered by the court. The defendant stated that he now understood the issue and that he would like the court to consider the matter rather than the jury. The following colloquy then occurred:

"The Court: . . . Counsel also mentioned that [the defendant] might want to address the court. I don't know if that—prior to jury selection. I don't know if that's the case or not.[4] Are we set to go?

"The Defendant: Yeah. We set to go.

"The Court: Okay. Fine.

"[Defense Counsel]: Your Honor, I would like to briefly address the court.

"The Court: All right. Sure.

"[Defense Counsel]: There were some indications from [the defendant] that he did not want me as his attorney. That, as I explained to him, these proceedings, I would just like that on the record.

"The Court: All right. Let me just state that for the record that I'm here in my capacity as judge presiding over jury selection. I will not be the judge in the trial. I have another matter coming up. This matter is going to be presided over by [another judge] beginning on Thursday, March 24th. It's my understanding the trial will take about one week. The parties are selecting six

---

[4] The state filed a motion in this court requesting that we obtain and listen to the actual recording of this hearing, which, the state contended, would confirm that, before asking the defendant if he was "set to go," the court paused and permitted the defendant and counsel to confer. We granted the state's motion, and our review of the electronic recording supports the state's contention that the defendant and his counsel did confer for as long as they needed to do so before the court asked the defendant if he was "set to go."

jurors and two alternates. Each side has eight challenges that they may distribute as they wish between the regulars and alternates. And is that satisfactory to both sides?" The parties indicated that this was satisfactory.

The court then proceeded to put the defendant to plea on the first three charges on the new long form information that had been filed by the state, and the defendant entered a plea of not guilty on each charge, electing to be tried by a jury. On the charge of criminal possession of a firearm, the defendant entered a plea of not guilty and stated that he was electing a jury trial on this charge as well. The court instructed the defendant to consult with his attorney, to which the defendant then replied that he wanted that charge to be tried to the court but that he was "not clear on that." The following colloquy then took place:

"The Court: Okay. Do you understand that a trial to the court is a trial to the judge?

"The Defendant: Um-hum. . . .

"The Court: Whoever tries it is this—this particular count is going to hear evidence concerning your previous convictions, you have to—you understand that?

"The Defendant: Yes.

"The Court: Okay. And the question is, if it goes to the jury, that's your perfect right, then the jury will hear that evidence of your previous conviction or convictions. Do you understand that?

"The Defendant: Yes.

"The Court: Okay. If it goes before the judge, only the judge hears that. The question is, who do you want to try that particular count to? Do you want to try it to the court or to the jury?

"The Defendant: The jury. The jury.

"The Court: Well, consult with your counsel again.[5]

"[Defense Counsel]: So you understand?

"The Defendant: I understand. I understand. I understand.

"[Defense Counsel]: Your Honor, against counsel's advice, he wants to proceed against—proceed on that count to the jury.

"The Court: Okay, let me just ask you, are you clear on this then, you want all four counts tried to the jury.

"The Defendant: Yes.

"The Court: And you understand that one of the elements of criminal possession of a pistol is you—will involve any—your previous record. Do you understand that?

"The Defendant: Yes.

"The Court: And you understand that if it's tried to the jury, the jury will hear your previous record?

"The Defendant: Yes.

"The Court: Okay. And knowing that, it is your decision, you want this matter to be tried to the jury as well?

"The Defendant: Yes.

"The Court: Are you positive?

"The Defendant: I'm positive.

"The Court: Okay. Do you have any questions for me or for your attorney?[6] Any questions? . . .

---

[5] The electronic recording of the March 7, 2011 hearing confirms that the defendant conferred with his counsel for a second time during the hearing as directed by the court.

[6] A review of the audio recording of the hearing reveals that the defendant conferred with his counsel for a third time during the hearing at this point.

"The Defendant: No, no questions."

Jury selection then commenced and trial began. The defendant was found guilty on the charges of carrying a pistol without a permit, interfering with an officer and criminal possession of a firearm. The court accepted the verdict and sentenced the defendant to a total effective sentence of ten years imprisonment, three years of which were mandatory. This appeal followed.

On appeal, the defendant claims that he is entitled to a new trial because the court violated his right to counsel of choice and, additionally, abused its discretion by failing to conduct an inquiry when told that the defendant no longer wanted to be represented by his private attorney. The defendant argues: "[T]he failure of the trial court to conduct any inquiry at all violated his constitutional right to counsel of choice. The court's failure to address the issue and conduct any inquiry at all denied the defendant the opportunity to retain counsel in whom he could trust and have confidence, and through whom he could shape his defense. In order to ensure that a defendant is not improperly forced to go to trial with a retained attorney he does not want and not denied a reasonable opportunity to retain counsel of his choice, the court must at the very least 'scrutinize closely the basis' for the request. To this end, the court must afford the defendant an opportunity to articulate the basis for the complaint or request and elicit further information if necessary in order to make an informed decision. To ignore the complaint without any inquiry whatsoever denies the defendant his right to counsel of choice."

The defendant also argues: "Even if this court does not find that the trial court's failure to inquire amounts to a denial of the defendant's constitutional right to counsel of choice, the defendant is still entitled to relief because the trial court abused its discretion in failing to

inquire." The defendant continues: "Here, the complaint was substantial enough to warrant inquiry of some kind. The complaint was significant enough for counsel himself to bring it to the court's attention. Rather than afford the defendant an opportunity to address the court and make a record, however, the court stymied the defendant by ignoring counsel's comment and moving on." The state argues: "[A]fter the court invited the defendant to speak and he declined that invitation, the court properly exercised its discretion and determined that further inquiry was not necessary . . . . Additionally, the 'complaint' presented to the court was not enough to trigger an inquiry as it was insubstantial, unclear and equivocal. Finally, when a defendant retains private counsel, he should be required to make a clear and unequivocal statement that he wishes to effectuate a change in his representation before the trial court is forced to interject itself into the attorney-client relationship and risk intruding on the defendant's right to counsel of choice." We conclude that the court proceeded properly under the circumstances presented.

"It is well settled that the guarantee of assistance of counsel under the sixth amendment to the United States constitution encompasses the right to select one's own attorney. It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." (Internal quotation marks omitted.) *State* v. *Peeler*, 265 Conn. 460, 470, 828 A.2d 1216 (2003), cert. denied, 541 U.S. 1029, 124 S. Ct. 2094, 158 L. Ed. 2d 710 (2004). "A critical aspect of making a defense is choosing the person who serves as one's assistant and representative. The right to retain private counsel serves to foster the trust between attorney and client that is necessary for the attorney to be a truly effective advocate. . . . Not only are decisions crucial to the defendant's liberty placed in counsel's hands . . . but

the defendant's perception of the fairness of the process, and his willingness to acquiesce in its results, depend upon his confidence in his counsel's dedication, loyalty, and ability." (Internal quotation marks omitted.) Id., 471. "[I]t is well settled that if the decision by a trial court deprived a defendant of his constitutional right to counsel of choice, prejudice will be presumed." Id., 475.

"Where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction. . . . If [t]he defendant's eruptions at trial, however, fell short of a seemingly substantial complaint, we have held that the trial court need not inquire into the reasons underlying the defendant's dissatisfaction with his attorney. . . . The extent of an inquiry into a complaint concerning defense counsel lies within the discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *Robinson*, 227 Conn. 711, 725, 631 A.2d 288 (1993).

In this case, we conclude that the court did not violate the defendant's right to counsel of choice, nor did it abuse its discretion when it did not address counsel's statement that he just wanted to put on the record that "[t]here were some indications from [the defendant] that he did not want me as his attorney."

To support his claim of a constitutional violation, the defendant relies heavily on the case of *Benitez* v. *United States*, 521 F.3d 625 (6th Cir. 2008). In *Benitez*, the defendant's attorney, at the start of the defendant's sentencing hearing, informed the court that the defendant had fired him the previous night. Id., 627–28. The defendant, who spoke through an interpreter, confirmed to the court that he did not want this attorney to represent him. Id., 628. The court told counsel to stand there for " 'a little while longer,' " and it then

asked the defendant if he wanted the attorney to speak on his behalf, to which the defendant responded that if he still was going to get sentenced either way, then counsel could speak on his behalf. Id. The defendant did not file a direct appeal, but filed a motion for relief from judgment, arguing, inter alia, that he had been deprived of his sixth amendment right to counsel during the sentencing hearing. Id., 628–29. The defendant argued that "he was denied the right to counsel because, despite having expressed dissatisfaction with [his attorney] and informing the district court that he did not want [this attorney] to represent him, the district court failed to 'ascertain the basis for [the defendant's] dissatisfaction.' " Id., 630–31. The United States Court of Appeals for the Sixth Circuit agreed, although it acknowledged that this case did not fit squarely within traditional sixth amendment cases. See id., 631. The court explained that "the Sixth Amendment *is* implicated where a criminal defendant seeks to change the status of his representation. This kind of 'change' of status usually arises in one of two ways: (1) a defendant seeks to invoke his right to self-representation . . . or (2) a defendant seeks to substitute his counsel . . . ." (Citations omitted; emphasis in original.) Id. Although concluding that the defendant had neither invoked his right to self-representation nor sought to substitute his counsel; id., 632–33; it, nonetheless, concluded that the statements made at the start of the hearing were sufficient enough to equate to " 'a motion or something that approximates such a motion' "; id., 634; see id., 635; so as to require an inquiry "into the source and nature of [the defendant's] dissatisfaction . . . ." Id., 636.

We conclude that *Benitez* is inapposite to the present case. In *Benitez*, counsel informed the court that the defendant had fired him the night before, and the defendant confirmed this statement. Id., 627–28. In the present case, the court specifically mentioned that counsel

had stated that the defendant "might want to address the court . . . ." The court then stated that it did not know if that was still the case. A review of the audio recording of the hearing reveals that it was at this point that the defendant and counsel had a discussion while the court waited for their discussion to conclude. The court then asked the defendant: "Are we set to go?" The defendant, himself, stated "Yeah. We set to go." Counsel then stated that he just wanted to put on the record that "[t]here were some indications from [the defendant] that he did not want me as his attorney." That issue ostensibly having been resolved between the defendant and his attorney, the court proceeded with the hearing. During the March 7 hearing, the defendant gave no direct indication that he was dissatisfied with his counsel; he made no motion or anything that could be considered motion-like; rather, when given the opportunity to speak by the court, he discussed the situation with his counsel, and he told the court that he was ready to proceed. It was counsel who subsequently wanted to put on the record that there had been "some indications from [the defendant] that he did not want me as his attorney"—documenting that the defendant and counsel may have had a prior disagreement, but that it no longer was an issue that would impede the progress of the case.

Because the court timely gave the defendant and his attorney an opportunity to confer during the hearing, and the defendant thereafter stated that he was ready to proceed, we agree with the state's position that any inquiry by the court at that juncture was unnecessary and could have intruded into the attorney-client relationship. The defendant voiced no dissatisfaction with counsel, despite being given an opportunity to address the court. Counsel's remark, after conferring with his client, appears to be nothing more than a statement for the record explaining why the defendant, prior to their

consultation, might have wanted to address the court. There being no indication from the defendant, however, that there was an ongoing substantial disagreement, the court properly continued with the hearing, not interfering with the attorney-client relationship. We conclude, therefore, that the court did not act in violation of the defendant's sixth amendment right to counsel of his choice.

The defendant additionally argues that, even if the court's inaction did not implicate his sixth amendment right, the court, nonetheless, abused its discretion when it did not conduct an inquiry of the defendant after counsel's statement for the record. For the same reasons stated previously, we conclude that the court acted properly under the circumstances presented. "[W]here a defendant voices a 'seemingly substantial complaint about counsel,' the court should inquire into the reasons for dissatisfaction." *McKee* v. *Harris*, 649 F.2d 927, 933 (2d Cir. 1981), cert. denied, 456 U.S. 917, 102 S. Ct. 1773, 72 L. Ed. 2d 177 (1982). In this case, the defendant did not make a " 'seemingly substantial complaint' " about counsel, whom he previously had selected and retained. We conclude therefore, on the basis of the record before us, that the trial court did not err when it did not conduct an inquiry of the defendant on the basis of counsel's statement for the record.

The judgment is affirmed.

In this opinion the other judges concurred.