NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0497n.06
Case No. 18-1678

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 27, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| RACHAEL RENEE DEBRULER, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

_____/

Before: GUY, BUSH, and MURPHY, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** A jury convicted defendant Rachael DeBruler of various crimes involving a drug-trafficking conspiracy spanning Michigan's two peninsulas. She now appeals, arguing that the district court violated her rights under the Sixth Amendment when it denied her motion for new counsel prior to trial. We affirm.

The Sixth Amendment entitles a criminal defendant to counsel, but it does not provide an absolute right to the counsel of her choice. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). We have held that when an indigent criminal defendant moves for new appointed counsel, the trial court "is obligated to inquire into the defendant's complaint and determine whether there is good cause for the substitution." *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008). We review the district court's ultimate decision for abuse of discretion, usually considering three

initial factors: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry; and (3) whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense. *United States v. Powell*, 847 F.3d 760, 778 (6th Cir. 2017). We then consider those three factors against the backdrop of a fourth: the public's interest in the prompt and efficient administration of justice. *Id.*

No one disputes that DeBruler's motion was timely. At the time she filed it, trial was not scheduled to begin for another two months, and ultimately did not occur until several months after that. But the parties disagree on the adequacy of the court's inquiry after DeBruler raised her motion. In the government's view, the court did all that it could: it held a hearing just over two weeks after receiving DeBruler's pro se motion and ordered her to appear personally. But she failed to show up. Her appointed attorney did appear, so the magistrate judge told the attorney to speak with DeBruler and bring the matter up again, if necessary, the next time DeBruler appeared before the court. No one brought it up again. The government concludes that, if anything, it was DeBruler who deprived the court of the chance to hear her out.

A few added details, however, paint a slightly different picture. DeBruler could not afford an attorney, so the court appointed one in February 2017. In late August, DeBruler mailed a motion to the court explaining the troubles she was having with her attorney and requesting a substitution. On September 5, the court set a hearing for the following week, alerting DeBruler of the time and place by mail. The hearing was set for 9:30 a.m. in Marquette, Michigan—about 425 miles from DeBruler's home in Detroit.

Evidently the mailed notice made it to DeBruler before the day of the hearing because that morning she called the court to report that "her ride from Detroit fell through" and thus she could not attend. A magistrate judge held a two-minute hearing at the scheduled time and denied the

motion on the record. At the hearing, the court asked DeBruler's attorney, "[D]o you think there's been a breakdown of your relationship with Ms. Debruler?" Her attorney said no. The court went on, "She didn't show up today, although she was ordered to do so. Have you had any difficulty getting her to show up for meetings with you?" Her attorney said that he typically had to travel to Detroit to meet with her, as she lacked the means and a reliable vehicle to get to his office in Grand Rapids. The court concluded, "I don't have a better attorney on the panel [of potential court-appointed attorneys] than you, . . . and I don't see any reason to replace you, so I'm going to deny her request to the extent I've got one. I would like you to talk to her about it, and next time she's up here, if there are matters you think you need to address on the record, we can." The attorney replied, "Very well," and the hearing concluded. The court entered an order formally denying the motion the same day.

The record is silent on whether DeBruler actually received a copy of that order. But even if she did, it would not have revealed why her motion was denied. It stated merely that the motion was denied "for the reasons stated on the record." The transcript of the hearing, however, was not produced until eight months after she had been convicted, when her appointed appellate counsel requested it. Conceivably, then, DeBruler could have reasonably believed she had a pending motion long after it was denied—or knew it had been denied but not known the reason until it was too late.

After the September hearing, DeBruler does not seem to have personally appeared before the court—whether in the flesh or by phone—until the January trial. In the preceding November, her attorney moved on her behalf for the court to waive the requirement that she appear in person at the final pretrial conference due to the burden and expense of traveling to Marquette. The court granted the motion, but only after she personally signed a waiver indicating that she knowingly

waived her right to attend the conference. As it happened, the conference was conducted over the phone anyway, but she still does not seem to have personally participated in it. DeBruler did, of course, appear personally for the duration of her trial and notably she never brought up any difficulties with her attorney or her motion during that time.

With these details in hand, we turn to the first question before us: did the district court adequately inquire into DeBruler's complaint? We have held that "the district court simply must allow a defendant the opportunity to explain the attorney-client conflict as he perceives it." *United States v. Marrero*, 651 F.3d 453, 465 (6th Cir. 2011). Giving a defendant this chance to be heard "not only aids in determining whether 'good cause' has been shown, but serves to ease the defendant's distrust, to preserve the integrity of the trial process, and to foster confidence in the jury verdict." *Iles*, 906 F.2d at 1131. Often the defendant's chance to be heard comes through a hearing, and when we review those hearings, we regularly note the length and nature of the discussions. *See, e.g.*, *United States v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009) ("[T]he district court engaged in multiple lengthy discussions . . . that span many transcript pages . . . ."); *United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006) ("[T]he district court engaged in a discussion with the defendant and counsel that covers numerous pages of transcript . . . ."); *United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004) ("[T]he district court summarized the contents of [defendant's] letters and allowed [defendant], his defense counsel, and the prosecutor the opportunity to address the complaint at issue.").

The court's inquiry into DeBruler's complaint fell short. We recognize the difficulties in conducting pretrial proceedings in Marquette while parties, attorneys, and judicial officers may be based much further south. But that is why our procedures allow for phone conferences, electronic filing, and the like. Indeed, the record reveals that telephonic conferences were often used in this

case. Given those alternatives, the in-person hearing at a faraway courthouse does not seem to have given the indigent DeBruler a reasonable opportunity to explain the conflict and ease her distrust. She was given a week's notice (perhaps less) to find a way to get to an early-morning hearing 425 miles away. When she alerted the court that she could not attend, and her attorney confirmed that she had unreliable transportation, the court denied her motion and relied entirely on her complained-of attorney to monitor the matter. The government asserts that because DeBruler failed to appear, "the onus was on [her] to raise the issue again." But the district court should have known that its laconic order and lack of transcript could easily leave DeBruler in the dark if her relationship with her attorney was indeed on the rocks. On balance, the court's denial, with no further follow-up, failed to adequately inquire into DeBruler's complaint about her attorney.

We must next ask whether the purported trouble between DeBruler and her attorney was so great that it resulted in a total lack of communication preventing an adequate defense. This goes beyond mere disagreement or a strained relationship; we have described it as "a complete communication breakdown." *United States v. Jennings*, 83 F.3d 145, 149 (6th Cir. 1996); *see also Marrero*, 651 F.3d at 466 (focusing simply on whether defendant could talk to or contact his lawyer). Unfortunately, the magistrate judge's limited inquiry leaves the record rather sparse on this factor and DeBruler's appellate briefs do not address it in much detail. What is available is DeBruler's motion, and nowhere in that motion did DeBruler contend that she was unable to communicate with her attorney. To the contrary, she gave several examples of their exchanges. Essentially, her complaint was that her attorney left her out of decision making and was putting forth what she believed was an inadequate effort for her defense. Thus, even taking all of the

assertions in the motion as true, DeBruler did not suggest that there was a total lack of communication preventing an adequate defense.

Our final consideration is the public's interest in the prompt and efficient administration of justice. The district court did not refer to this factor directly when it ruled on DeBruler's motion, but the court's decision to wait until the "next time she's up here" is consistent with the concern for efficiency and keeping the case on track. As we have noted, there was still ample time to more thoroughly resolve DeBruler's motion prior to trial—if necessary, by telephone. And there was good reason to not outsource follow-up to the attorney. But as a general matter, the public's interests were served by waiting to resolve the motion until both sides' attorneys were present in the hopes that any future hearing could be combined with other proceedings.

With all this in mind, we conclude that the district court did not abuse its discretion in denying DeBruler's motion. DeBruler was not entitled to an appointed attorney of her choosing and in moving for a new one, she bore the burden to show good cause. Her pro se motion failed to identify the type of breakdown necessitating a substitution. Although the court's inquiry following DeBruler's timely motion was lacking, we conclude that, on balance, the court's denial of her motion was not an abuse of discretion.

The judgment of the district court is AFFIRMED.