NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0242n.06

No. 11-3278

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Feb 29, 2012*

LEONARD GREEN, Clerk

SANTRAVIS COBB,                                          )
                                                        )       ON APPEAL FROM THE
    *Petitioner-Appellant*,                         )       UNITED STATES DISTRICT
                                                        )       COURT FOR THE SOUTHERN
v.                                                      )       DISTRICT OF OHIO
                                                        )
WARDEN, CHILLICOTHE CORRECTIONAL                        )               O P I N I O N
INSTITUTION,                                            )
                                                        )
    *Respondent-Appellee*.                          )


BEFORE:     COLE, GILMAN, and WHITE, Circuit Judges.

COLE, Circuit Judge.  Santravis Cobb, an Ohio prisoner who pleaded guilty to charges of

drug possession and trafficking in May 2006, appeals the district court's denial of his petition for a

writ of habeas corpus.  Cobb contends that the state trial court improperly denied his motion to

substitute counsel, and that the trial court unreasonably applied federal law when it failed to merge

his offenses at sentencing.  For the following reasons, we REVERSE the judgment of the district

court and conditionally GRANT the petition, giving the State of Ohio 180 days to allow Cobb to

withdraw his plea of no contest and proceed to trial or, failing that, to release him.

I.  BACKGROUND

In March of 2006, a Scioto County, Ohio, grand jury indicted Cobb on one charge of felony

drug possession and one charge of trafficking drugs.  (R&R, Dist. Ct. Docket No. 12, at 1.)  Pretrial

and suppression hearings took place on May 4 and 5, 2006, respectively, with the trial scheduled to commence on May 8, 2006. (*Id.* at 2.) Twenty-four days passed between Cobb's arraignment and the scheduled trial date, and nineteen days between initial discovery and the scheduled trial date. (Counsel Substitution Hrg., Dist Ct. Docket No. 5, at 3.) At the pretrial hearing, four days before the scheduled trial, Cobb's appointed counsel became aware, via supplemental discovery from the state, of "other acts" evidence that the state planned to use against Cobb at trial. (Respondent's Return of Writ, Dist. Ct. Docket No. 5, at 2.) Whether Cobb's appointed counsel asked for a continuance will be discussed in more detail below.

On the morning of May 8, a new, privately retained attorney requested that he be allowed to replace Cobb's appointed counsel, and that the trial date be continued for the purposes of preparing a defense. (R&R, Dist. Ct. Docket No. 12, at 2.) Cobb's appointed counsel informed the court that he did not feel adequately prepared for trial. (Counsel Substitution Hrg., Dist Ct. Docket No. 5, at 3-4.) He also justified the last-minute hiring and substitution of new counsel by pointing to the supplemental discovery, provided four days prior, informing defense counsel that Cobb "was being considered as someone who has done other acts, someone who is above the wholesale level." (*Id.* at 3.) In light of this new information, he argued, Cobb's family now understood the state's case to be stronger, and decided to hire an attorney. (*Id.* at 4.) Cobb's retained counsel also informed the court that Cobb believed that his appointed counsel "represents or has represented the husband of one of the key witnesses against" him. (Mot. for leave, Dist. Ct. Docket No. 5, Ex. 2, at 2.)

The state argued that it was prepared to begin the trial and had fifteen witnesses, including a state prisoner, ready to testify. (Counsel Substitution Hrg., Dist Ct. Docket No. 5, at 6.) The state

further claimed that continuing the case would not be feasible, in light of its busy summer schedule, and that the parties had previously consented to the May 8 trial date. (*Id.* at 5.) In response, Cobb's counsel stated, "I hardly agree [that there was a] consensus about a trial on the 8th. I asked you about waiving time and you said because of the crowded docket the Court is going forward." (*Id.* at 6.) The trial court did not respond, but noted that it had "two or three cases that were continued" on May 5 in anticipation of Cobb's case going to trial, and that the court had no indication that Cobb was considering other counsel. (*Id.*) The trial court denied the motion. (*Id.*)

On that same day, Cobb pleaded no contest to both counts of the indictment. (R&R, Dist. Ct. Docket No. 12, at 3.) Two days later, the trial court sentenced Cobb to consecutive ten-year prison terms for each count, for a total of twenty years. (*Id.*) Cobb appealed to the Ohio Court of Appeals for the Fourth Appellate District, raising two claims of error: first, that the trial court erred when it denied his motion to substitute counsel, and second, that the trial court erred in sentencing Cobb to maximum consecutive sentences. (Cobb App. Brief, Dist Ct. Docket No. 5, Ex. 5.) Cobb did not argue that the offense should have merged at sentencing, but that his sentence was excessive and that the terms should have run concurrently. (*Id.* at 7.) His conviction and sentence were affirmed. (*Ohio v. Cobb*, Ohio 4th App., Dist. Ct. Docket No. 5, Ex. 7.)

Cobb appealed pro se to the Ohio Supreme Court, presenting his previously raised claims of error; he additionally raised a due process claim, and a claim that his appellate counsel was ineffective for failing to raise the due process claim on appeal. (Cobb Ohio Sup. Ct. Br., Dist Ct. Docket No. 5, Ex. 8.) The Ohio Supreme Court denied leave to appeal. (*Ohio v. Cobb*, Case No. 2007-0989, Dist. Ct. Docket No. 5, Ex. 9.)

While his motion to the Ohio Supreme Court was pending, Cobb filed a pro se application to reopen his case before the Ohio Court of Appeals, pursuant to Ohio Rule of Appellate Procedure 26(B), arguing that his appellate counsel was ineffective for failing to raise his due process claim on direct appeal. (Rule 26(B) App., Dist. Ct. Docket No. 5, Ex. 10.) He later amended this application to argue additionally that his appellate counsel was ineffective for failing to argue that the trial court erred in imposing separate sentences for his offenses, in violation of the constitutional prohibition of double jeopardy. (*Id.* at 3.) In support of this claim, he cited to *State v. Cabrales*, No. C-050682, 2007 WL 624995 (Ohio. Ct. App. Mar. 2, 2007), a case that had been recently decided by the First Appellate District, which found that trafficking and possession are allied offenses requiring merger at sentencing. (*Id.* at 4.)

The Ohio Court of Appeals for the Fourth Appellate District denied Cobb's Rule 26(B) application, noting that Ohio law in that appellate district at that time did not hold trafficking and possession to be allied offenses of similar import. (Entry, Dist. Ct. Docket No. 5, Ex. 14, at 5.) Consequently, the court held that Cobb was not prejudiced by his counsel's failure to raise this argument on direct appeal. Cobb did not appeal that decision to the Ohio Supreme Court. (Rule 26(A) App., Dist. Ct. Docket No. 5, Ex. 15, at 3.)

In May 2008, the Ohio Public Defender filed a delayed application for reconsideration, pursuant to Ohio Rule of Appellate Procedure 26(A). (*Id.* at 1.) That application noted that the Ohio Supreme Court's recent decision in *Cabrales*, 118 Ohio St. 3d 54 (2008), which clarified whether to merge trafficking and possession offenses, rendered the prior Rule 26(B) ruling in Cobb's case erroneous. (*Id.* at 4.) The Ohio Court of Appeals for the Fourth Appellate District denied Cobb's

Rule 26(A) application, noting that its ruling on Cobb's Rule 26(B) application was correct under the laws in existence at the time of its decision. (Order, Dist. Ct. Docket No. 5, Ex. 16, at 2.) Further, that court noted, Cobb "could have appealed [the] denial of his [Rule 26(B)] application, but he chose not to do so." (*Id.* at 3.) Finally, that court stated that if it "reopened every case potentially affected by a later decision from the [Ohio] Supreme Court, the finality of every judgment becomes suspect." (*Id.*) The Ohio Supreme Court dismissed Cobb's appeal of that decision "as not involving any substantial constitutional question." (*Ohio v. Cobb*, Case No. 2008-1575, Dist. Ct. Docket No. 5, Ex. 18.)

In late 2008, Cobb filed his federal petition for a writ of habeas corpus in the district court, raising two grounds. Cobb argued that the trial court's denial of his motion to substitute counsel, and the Ohio Court of Appeals' failure to order a resentencing in light of the *Cabrales* decision, were unreasonable applications of clearly established federal law. (Pet., Dist. Ct. Docket No. 2, at 16.). The magistrate judge disagreed and recommended denial of the petition. (R&R, Dist. Ct. Docket No. 12.) The district court adopted the magistrate judge's report and recommendation, and also denied the petition. (Order adopting R&R, Dist. Ct. Docket No. 23.) This appeal followed.

### III. ANALYSIS

Because Cobb filed his habeas petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), AEDPA's provisions apply to his case. *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). This court in *Murphy* set out the standard of review under AEDPA as follows:

> Under AEDPA, a federal court may grant a writ of habeas corpus with respect to a "claim that was adjudicated on the merits in state court proceedings" if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A habeas petition may also be granted if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. § 2254(d)(2). A state-court decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams* [*v. Taylor*, 529 U.S. 362, 405 (2000)]. A state-court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id.* at 407–08, or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context," *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000).

*Id.* at 493–94. And, as the Supreme Court recently explained, our review under § 2254(d)(1) is "limited to the record that was before the state court." *Cullen v. Pinholster*, ⎯⎯ U.S. ⎯⎯, 131 S. Ct. 1388, 1398 (2011).

*A. Substitution of Counsel*

Cobb first argues that the Ohio Court of Appeals erred in reviewing the trial court's decision to deny Cobb's motion for substitution of counsel. (Cobb Br. 23.) The parties do not dispute that Cobb properly exhausted this issue in state court. It is therefore preserved for review.

The Ohio Court of Appeals, the highest state court to address this issue on the merits, considered several different factors in denying relief. (*Ohio v. Cobb*, Ohio 4th App., Dist. Ct. Docket No. 5, Ex. 7.) These included the timeliness of the motion; the failure to indicate the length of the continuance requested; inconvenience to the witnesses, opposing counsel, and the court; the trial court's authority to control its own docket; the lack of a conflict between Cobb and his

appointed counsel, who represented Cobb throughout all pretrial proceedings; and appointed counsel's failure to voice any need for a continuance during the pretrial hearings. (*Id.* at 6-7.)

"The Sixth Amendment requires that a defendant have a reasonable opportunity to employ counsel of his choosing." *Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011) (citing *Chandler v. Fretag*, 348 U.S. 3, 10 (1954)). In analyzing whether a state trial court unreasonably applied clearly established federal law when it denied a defendant's motion to substitute counsel, the following four factors are controlling: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; (3) whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense; and (4) a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice. *Id.* (citing *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009)). If the trial court erroneously deprived the defendant of his counsel of choice, the defendant need not additionally show that the error prejudiced him. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006). We address each of these issues in turn.

*1. Timeliness of the motion*

The parties do not dispute that Cobb's motion for substitution of counsel occurred on the morning that his trial was set to begin. But, the hearing in consideration of that motion reveals that Cobb's counsel had *previously* requested a continuance at the pretrial hearing in light of the state's supplemental discovery that was turned over only four days prior. (Counsel Substitution Hrg., Dist Ct. Docket No. 5, at 6.) Cobb's appointed counsel told the court, in light of the state's assertion that the parties were in agreement over the May 8 trial date, "I asked you about waiving time and you said

because of the crowded docket the Court is going forward." (*Id.*) Neither the trial court nor the state contested this statement. (*Id.*)

No court—not the Ohio Court of Appeals, the Ohio Supreme Court, or the district court—has considered this statement, even though it has always been part of the trial court record. The Ohio Court of Appeals even stated, in a footnote, that "[h]ad counsel made a motion for a continuance [upon receipt of the supplemental discovery], the trial court would have been hard pressed to justify denying it. . . . [i]n light of the last minute disclosures by the state . . . . " (*Ohio v. Cobb*, Ohio 4th App., Dist. Ct. Docket No. 5, Ex. 7, at 7 n.1.) And although the pretrial hearing transcript is not before us, the state conceded that Cobb's appointed counsel had previously asked for a continuance. In its brief to the Ohio Court of Appeals, the state acknowledged that "a continuance was discussed at a prior pre-trial conference . . . ." (Appellee Br., *Ohio v. Cobb*, Ohio 4th App., Dist. Ct. Docket No. 5, Ex. 6, at 7.)

This means, then, that the Ohio Court of Appeals, which was presented with evidence of the prior request for a continuance, and which specifically stated that it likely would have reversed if there had been a prior request for a continuance, erred in its assessment of the timeliness of Cobb's request to substitute counsel. All three requests—the pretrial motion for a continuance, the May 8 motion to substitute counsel, and the May 8 motion for a continuance—arose out of the state's supplemental discovery provided only four days before the trial was set to begin. The requests could not have been more timely. The Ohio Court of Appeals improperly ascribed fault to Cobb for failing to bring his motion earlier, yet failed to recognize that the only reason that Cobb's motion to

substitute counsel was untimely was because the trial court, as the Ohio Court of Appeals itself recognized, improperly denied the pretrial continuance.

We have previously noted that "[i]f the defendant's motion would necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *Henness*, 644 F.3d at 321 (quoting *Vasquez*, 560 F.3d at 466). Such deference may be overcome only if the trial court engages in "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay . . . ." *Vasquez*, 560 F.3d at 466 (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)). And although Cobb moved the court to substitute counsel on the morning of his trial, this was (1) after he had previously requested a continuance; (2) only four days after receiving supplemental discovery from the state; (3) only twenty-four days after his arraignment; and (4) only nineteen days after receiving initial discovery. Given the context, we cannot say that his request was untimely. And there can also be no argument that Cobb's request to substitute counsel in light of the new evidence, and in light of his appointed counsel's understandable inability to prepare adequately for trial, was a justifiable request for delay. It cannot be said that fairminded jurists could disagree that this factor weighs strongly in Cobb's favor.

*2. Adequacy of the court's inquiry*

The trial court's analysis as to why Cobb's motion to substitute counsel should be denied is limited to the following:

> I also want to add for the record that I had two or three other cases that were continued on Friday in anticipation of this going to trial and not requiring other counsel that would have to prepare over the weekend. We had no indication whatsoever that other counsel was even considered.

(Counsel Substitution Hrg., Dist Ct. Docket No. 5, at 6.)  The trial court did not comment on Cobb's

appointed counsel's statement that he lacked time to prepare adequately because of the state's

supplemental discovery.  The trial court also did not comment or hear argument on Cobb's retained

counsel's argument that Cobb was "concerned that a conflict of interest exists as a result of

[appointed counsel's] representation of both himself and a key prosecution witness's husband."

(Mot. for leave, Dist. Ct. Docket No. 5, Ex. 2, at 2.)

The Ohio Court of Appeals did not discuss the adequacy of the trial court's inquiry.  (*Ohio*

*v. Cobb*, Ohio 4th App., Dist. Ct. Docket No. 5, Ex. 7.)  The magistrate judge noted that the trial

court "did not conduct an extensive inquiry into the substance of petitioner's complaint about his

court-appointed counsel." (R&R, Dist. Ct. Docket No. 12, at 15.)  The district court agreed with this

assessment.  (Order adopting R&R, Dist. Ct. Docket No. 23, at 8.)

This Court's previous decisions require only that the trial court "allow a defendant the

opportunity to explain the attorney-client conflict as he perceives it."  *United States v. Marrero*, 651

F.3d 453, 465 (6th Cir. 2011) (citing *Vasquez*, 560 F.3d at 467; *Chambers*, 441 F.3d 438, 447 (6th

Cir. 2006); *Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004)).  But the trial court in those cases

did far more than the trial court here.  *Vasquez*, 560 F.3d at 467 ("The record demonstrates that the

district court engaged in multiple lengthy discussions with [the defendant and attorney] that span

many transcript pages regarding their alleged conflicts."); *Chambers*, 441 F.3d at 447 ("[T]he record

demonstrates that the district court engaged in a discussion with the defendant and counsel that

covers numerous pages of transcript."); *Saldivar-Trujillo*, 380 F.3d at 278 ("[T]he district court

summarized [the defendant's complaints] and allowed [the defendant], his defense counsel, and the

prosecutor the opportunity to address the complaint at issue."). We have further held that our assessment of the trial court's inquiry is contingent upon the trial court "inquir[ing] into [the defendant's] statements and ma[king] explicit findings . . . ." *Benitez v. United States*, 521 F.3d 625, 635 (6th Cir. 2008).

Here, the trial court's statements were limited to lamenting the inconvenience to the court that a substitution of counsel would cause, and it did not address either of Cobb's bases for the request. There was neither discussion nor findings as to appointed counsel's inability to prepare or the alleged conflict of interest. Although in previous cases we can be assured that the trial court heard, considered, and discussed the reasons for the conflict, the transcript here precludes such assurances. So this factor, too, weighs in Cobb's favor.

### 3. Total lack of communication

The Ohio Court of Appeals noted that "the record does not indicate that a conflict existed between Cobb and his appointed counsel, who represented Cobb throughout all pretrial proceedings." (*Ohio v. Cobb*, Ohio 4th App., Dist. Ct. Docket No. 5, Ex. 7, at 6.) We note that the test articulated in *Vasquez* and *Saldivar-Trujillo* is perhaps inapplicable here because the basis of the substitution request is the supplemental discovery and appointed counsel's inability to prepare and not an irreconcilable conflict between Cobb and his attorney. Regardless, we cannot say that the Ohio Court of Appeals was unreasonable in its conclusion. This factor weighs against Cobb.

### 4. Cobb's rights balanced against the efficient administration of justice

The Ohio Court of Appeals noted that a substitution of counsel and continuance would have "inconvenienced the witnesses, opposing counsel, and the court" and that rescheduling would be

difficult. (*Ohio v. Cobb*, Ohio 4th App., Dist. Ct. Docket No. 5, Ex. 7, at 6-7.) It did not consider Cobb's rights when conducting its analysis. The magistrate judge similarly did not consider this fourth factor, finding only that because the first three factors weighed against Cobb, the trial court acted "in favor of the public's interest in the prompt and efficient administration of justice." (R&R, Dist. Ct. Docket No. 12, at 15.) The district court simply stated that "the trial court weighed all the factors and acted within its discretion" to deny the motion in favor of the public's interest. (Order adopting R&R, Dist. Ct. Docket No. 23, at 8.) No court has in this case more than facially considered this issue.

Cobb was charged with major offenses. The parties do not dispute that four days before his trial was set to begin, the state provided supplemental discovery to Cobb's appointed counsel alluding to the state's intent to introduce evidence of "other acts." The parties also do not dispute that Cobb's appointed counsel only then knew of the number of witnesses that the state planned to have testify. In light of this, Cobb's appointed counsel requested, at the pretrial hearing, a continuance so that he could adequately prepare. But, because of a heavy caseload in the prosecutor's office and its own crowded docket, the trial court denied the request. As the Ohio Court of Appeals made clear in a footnote, it would have considered the trial court's decision with more "rigorous scrutiny" had it realized that appointed counsel had made a pretrial request. *Ohio v. Cobb*, Ohio 4th App., Dist. Ct. Docket No. 5, Ex. 7, at 7, n.1.) Appointed counsel then prepared all weekend for the trial, but still felt that he could not mount an adequate defense. During this time, Cobb's family, realizing that the supplemental discovery made the case against Cobb stronger than

previously expected, collected funds to hire an attorney. (Counsel Substitution Hrg., Dist Ct. Docket No. 5, at 4.)

The trial court's inquiry in denying the motion for substitution focused *only* on the delay in administering justice. But, less than four weeks had passed since Cobb had been arraigned and less than three weeks had passed since initial discovery had been provided to Cobb. (*Id.* at 3.) Although a grant of the request would have delayed the administration of justice, our analysis of this fourth factor must consider *both* Cobb's rights and the rights of the public. *See Marrero*, 651 F.3d at 467. Any substitution of counsel will "almost certainly necessitate a last-minute continuance," *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008) (quoting *United States v. Pierce*, 60 F.3d 886, 891 (1st Cir. 1995)), so more than simply a delay must be shown to justify denying a motion to substitute counsel. If not, then this factor would always weigh against the defendant. The state had not experienced multiple continuances or other delays in bringing Cobb to trial; given the belated discovery practices and the denial of a previous motion for a continuance, this factor also weighs strongly in Cobb's favor.

In sum, the Ohio Court of Appeals unreasonably applied Supreme Court precedent when it concluded that Cobb had not experienced an erroneous deprivation of his counsel of choice. *See Gonzalez-Lopez*, 548 U.S. at 144 ("[A]n element of the [the right to counsel] is the right of a defendant who does not require appointed counsel to choose who will represent him."); *Morris*, 461 U.S. at 14 ("Of course, inconvenience and embarrassment to witnesses cannot justify failing to enforce constitutional rights of an accused: when prejudicial error is made that clearly impairs a defendant's constitutional rights, the burden of a new trial must be borne by the prosecution, the

courts, and the witnesses; the Constitution permits nothing less."); *Chandler*, 348 U.S. at 10 ("Regardless of whether petitioner would have been entitled to the appointment of counsel, his right to be heard through his own counsel was unqualified."). Considering that his motion was as timely as it could have been given the supplemental discovery, the inadequacy of the trial court's consideration of his request, and the balancing of Cobb's rights against the interest of the public, we conclude that the Ohio Court of Appeals improperly and unreasonably affirmed the trial court's denial of Cobb's motion to substitute counsel.

We further note that, although not raised by the parties, the Ohio Court of Appeals based its decision "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). For a petitioner to prevail on a claim brought under § 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

As already explained, Cobb presented a record to the Ohio Court of Appeals demonstrating that his appointed counsel had requested a continuance at the pretrial hearing. And the state, in its brief to the Ohio Court of Appeals, conceded that such a request occurred. But this shows only that there was an unreasonable determination of fact—it does not, by itself, require us to conclude that the Ohio Court of Appeals based its decision on such a determination. For that, we look to the Ohio Court of Appeals' footnote, in which that court declared that it would have scrutinized the trial court's decision with far more rigor if a continuance at pretrial had been requested. This statement

leads us to the conclusion that the Ohio Court of Appeals based its decision to affirm the trial court's denial of Cobb's motion to substitute on an unreasonable determination of the facts.

*B. Double Jeopardy*

Cobb further asserts that the Ohio Court of Appeals erred in upholding his sentence, in light of a recent Ohio Supreme Court ruling that merges certain trafficking and possession offenses. In light of our conclusion above, we need not reach this issue.

## III. CONCLUSION

For the reasons stated above, the judgment of the district court is REVERSED and a conditional writ of habeas corpus is hereby GRANTED, giving the State of Ohio 180 days from the date of this order to allow Cobb to withdraw his plea of no contest and proceed to trial or, failing that, to release him from custody.