NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0068n.06

Case No. 21-4126

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 02, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| KEITH JOREL HUDSON | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

Before: BATCHELDER, STRANCH, and DAVIS, Circuit Judges.

**DAVIS, Circuit Judge.** Keith Jorel Hudson was sentenced to 22 years' imprisonment after pleading guilty to five robbery-related offenses. Shortly after entering into a plea agreement, Hudson filed pro se letters with the district court raising concerns about his attorney representation. The court construed one of his letters as a motion for a new attorney and summarily denied it. Hudson argues that the district court erred when it denied his motion, because it failed to conduct an adequate inquiry into his dissatisfaction with counsel. For the reasons set forth below, we agree and therefore **VACATE** the district court's denial of Hudson's motion and **REMAND** for further proceedings.

**I.**

In early 2020, a grand jury indicted Hudson on three counts of attempting, in and affecting interstate commerce, to unlawfully obstruct and affect commerce and the movement of articles in commerce by robbery in violation of 18 U.S.C. §§ 1951–52, two counts of discharging a firearm

during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and one count of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  The court appointed the Federal Public Defender Office ("FPD") to represent Hudson during his initial appearance on the criminal complaint that preceded his indictment.  But roughly four months later Hudson's FPD attorney filed a motion to withdraw from the representation; the court granted the motion and Hudson retained private counsel who represented him at all times relevant to this appeal.

On the advice of counsel, Hudson entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) in April 2021 in which he agreed to plead guilty to five of the six charges contained in the indictment—all three robbery counts plus the two counts for discharging a firearm during and in relation to a crime of violence.  While not at issue in this appeal, the criminal conduct stipulated as the basis of his plea provided, in pertinent part, that Hudson used false online advertisements to lure three separate victims to a particular location and rob them.  Importantly, in the plea agreement, Hudson agreed to waive the right to appeal both his conviction and his sentence, unless the sentence imposed exceeded the statutory maximum.  The waiver provision included a carve-out, however, that it "shall not be construed to bar a claim by the Defendant of ineffective assistance of counsel or prosecutorial misconduct."  Finally, the plea agreement included language indicating that Hudson certified that (1) he had entered the agreement knowingly and voluntarily; (2) he had reviewed it with his attorney; and (3) he was "fully satisfied with the representation, advice, and other assistance of counsel in this case."

Hudson and his counsel appeared before a magistrate judge for a change of plea hearing approximately two weeks later, on May 5, 2021.  During that hearing, Hudson repeatedly affirmed that he was making an informed decision, with the advice of counsel, to enter the plea agreement.

Nonetheless, Hudson expressed some fundamental confusion about the proceedings. For example, he believed that he only faced four criminal charges, when in fact the superseding indictment contained six counts, and he was pleading guilty to five of them. He also said he "[didn't] really understand a whole lot" about his case. The court endeavored to clarify Hudson's charges in response to these statements. It also invited Hudson to confer with counsel several times—as did the Government—but Hudson consistently declined. Hudson's attorney affirmed to the court that she had met with Hudson on many occasions and thoroughly discussed his defense with him. Ultimately, Hudson indicated that he wished to proceed with pleading guilty and the court went forward with completing the hearing. The magistrate judge later submitted a report and recommendation to the district court judge recommending that Hudson's guilty plea be accepted. And on June 8, 2021, the district court accepted his guilty plea.

On June 10, 2021, Hudson penned a handwritten letter to the district court with the caption "Withdraw Plea – Ineffective Assistance of Counsel," in which he averred:

> Counsel did not explain, nor go over Plea Agreement with me because I am dumbfound [sic] to the Federal Rules and I never had any dealing regarding the period. My counselor never explain [sic] any of my case, charges with me, and she gave me a paper to sign and when I asked her what the paper was I was signing, later I had an inmate tell me my attorney misled me to sign a plea agreement. Your honor I want to withdraw my plea.

Hudson mailed a second letter to the court dated June 29, 2021, in which he expanded on his previous complaints about his counsel, stating:

> The reason I[']m writing is because I would like to [file] a motion to withdraw my attorney from my case, reasoning being,
>
> > (1) ineffective assistance of counsel[,]
> > (2) did not explain my plea agreement to me[,]
> > (3) I feel like she's working against me, and wont do nothing that I've asked her to do[,]
> > (4) I was lied to, just so I would plead out[,]
> > (5) I don't know my offense level[,]

3

(6)    I cant never get ahold of her[, and]

(7)    I want to withdraw my plea as well, cause my agreement isn't right.

. . . . In connection with the discussion of whether the plea was knowing and voluntary, it appears certain that neither (me) nor my counsel took note of the impending passage of the First Step Act and its enormous impact on plea and sentencing considerations. I[']m asking to withdraw my plea because my attorney brought undue pressure upon me (coerced me into entering the 22 [year] plea agreement).

The district court held a hearing to address Hudson's letters on July 19, 2021. The court construed Hudson's first letter as a request to withdraw his guilty plea, and the second letter as a motion to withdraw his attorney (or a motion to appoint new counsel) and as setting forth a claim for ineffective assistance of counsel. The court addressed them in reverse order. As to the letter pertaining to counsel, the court stated in full:

[W]e're going to take care of that one pretty straightforward, Mr. Hudson. You hired [the private attorney]. She's your lawyer. She wasn't appointed by the Court. You hired her, and you picked her. It's not for me to interfere with your relationship with her.

To the extent you are now claiming ineffective assistance of counsel, if that's what you are claiming . . . I would say there's no evidence to support any element of the tests for ineffective assistance of counsel. There's no evidence or allegation that [your lawyer's] performance has been deficient or that such deficiencies have prejudiced you.

So to the extent that your filings – your letters might be construed as a motion to withdraw or a motion to appoint new counsel, that's denied. You've retained counsel. If you want a new lawyer, go out and hire one.

The court did not query Hudson or otherwise directly engage him regarding his motion for new counsel. Nor did the court question counsel about any breakdown in the attorney-client relationship.

The court then moved on to Hudson's first letter, in which he requested to withdraw the guilty plea. The court asked defense counsel whether Hudson still wanted to pursue this request. The attorney conceded that she had "only spoken briefly to Mr. Hudson" and that "[h]e would have to speak to that." In response, the court asked Hudson if he still wanted to withdraw his plea.

4

And Hudson answered yes. The court then noted for the record that it reviewed Hudson's pro se letters as well as the Government's briefing in opposition. The court invited the Government to make further argument in support of its opposition. But neither Hudson nor his attorney was similarly engaged by the court before the court denied Hudson's request. The hearing, which lasted about seven minutes, concluded with no further statements from Hudson or his counsel.

Hudson then wrote a third letter to the court, dated July 24, 2021. He began by stating that he had wanted to speak during the hearing a few days earlier, "but was not sure if [he] could." He then reiterated various issues he perceived about his attorney representation. Among other things, he claimed that his attorney had been woefully unresponsive: neither Hudson nor his wife were able to contact her; she failed to provide Hudson a copy of his discovery materials; and she never discussed the plea agreement or Presentence Investigation Report ("PSR") with Hudson. Hudson further indicated he was concerned that his attorney had been working against his interests alongside the government. Overall, he felt that his lawyer had not been honest with him about his case and generally failed to protect his interests.

The court did not take any action on this letter until Hudson's next court date, which was his sentencing hearing on November 19, 2021. At that time, the court informed Hudson that it received his third letter. The only question the court asked that touched upon any subject addressed in that letter was to confirm that Hudson had reviewed the PSR with his attorney. The court then invited Hudson to speak as part of sentencing but did not otherwise engage Hudson about his letters or satisfaction with counsel generally. Although Hudson spoke, he did not address his letter or his concerns about his counsel. After hearing from Hudson, his attorney and the government's attorney, the court sentenced Hudson to 22 years' imprisonment and 5 years' supervised release pursuant to the terms of the plea agreement.

Hudson terminated his attorney shortly after sentencing. He also filed a timely notice of appeal and sought appointment of appellate counsel. Hudson now requests that this court vacate his judgment and sentence and remand to the district court for further proceedings. He argues that the district court abused its discretion when it failed to inquire into his expressed dissatisfaction with counsel.

## II.

As a threshold issue, the Government contends that Hudson's claims are foreclosed by his plea agreement's appellate waiver. That waiver provision reads as follows:

> **Waiver of Appeal**: In exchange for the concessions made by the USAO in this plea agreement, the Defendant waives the right to appeal the conviction and sentence imposed, except if the sentence imposed exceeds the statutory maximum. Defendant also waives the right to attack his conviction or sentence collaterally, such as by way of a motion brought under 28 U.S.C. § 2255 and 18 U.S.C. § 3582. However, this waiver shall not be construed to bar a claim by the Defendant of ineffective assistance of counsel or prosecutorial misconduct.

True, Hudson broadly waived the right to appeal his conviction and sentence with certain limited exceptions in exchange for the sentencing disposition he negotiated with the Government. But, as relevant here, the waiver expressly excluded any claims Hudson might bring for ineffective assistance of counsel. The Government insists that Hudson's appeal does not meet this exception because Hudson squarely challenges the district court's "handling of the inquiry regarding his (express or implied) motions to substitute" rather than the effectiveness of his counsel. We review de novo the question of whether a claim raised on appeal falls within the scope of an appellate waiver. *United States v. Milliron*, 984 F.3d 1188, 1193 (6th Cir. 2021) (citing *United States v. Griffin*, 854 F.3d 911, 914 (6th Cir. 2017)). Here, Hudson's request for new counsel necessarily implicates his right to effective assistance of counsel. We thus hold that this appeal does not fall within the proscription of the waiver.

We have not squarely addressed the scope of an appellate waiver in a comparable context, but the Eleventh Circuit recently addressed the scope of a similar appellate waiver under analogous circumstances. *See United States v. Rogers*, 839 F. App'x 436 (11th Cir. 2021). We find its reasoning instructive. Rogers pleaded guilty pursuant to the terms of a plea agreement with the government and waived his right to appeal, subject to certain limited exceptions. *Id.* at 437. Like Hudson's waiver, Rogers' appellate waiver preserved his right to bring a claim for ineffective assistance of counsel on appeal. *Id.* Shortly before his sentencing date, Rogers wrote a pro se letter to the court requesting new counsel. *Id.* He informed the court that his relationship with counsel had broken down and that counsel pressured him into pleading guilty. *Id.* At his next court date, which was his sentencing hearing, Rogers reiterated his request for a new attorney. *Id.* After engaging in a colloquy with the defendant and his counsel, the court denied Rogers' motion. *Id.* Rogers appealed his sentence on the basis that his Sixth Amendment right to counsel was violated when the district court denied his request for a new lawyer. *Id.* at 438. The Government urged the Eleventh Circuit to dismiss Rogers' appeal as barred by his broad appellate waiver. *Id.* The court rejected this argument—reasoning that the district court's decision not to substitute counsel, despite Rogers's claim that their relationship had broken down, "necessarily implicate[d] his right to effective assistance of counsel." *Id.* The court elaborated as follows:

> Our precedent allows a defendant with appointed counsel to demand a different lawyer only when there is good cause. *United States v. Jimenez-Antunez*, 820 F.3d 1267, 1271 (11th Cir. 2016). Good cause exists when there is a "fundamental problem," such as "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Id.* (quotation marks omitted). Importantly, the good cause rule "protects the right to effective assistance of counsel; <u>if good cause exists, a defendant no longer has effective representation</u>." *Id.* (emphasis added). Rogers says he had good cause because there was conflict between him and Colvin. In his view, this conflict meant the district court's failure to appoint a different lawyer left him without effective assistance of counsel at his sentencing. Rogers's claim on appeal thus necessarily implicates his right to effective assistance of counsel. We therefore

7

conclude that his claim falls within the exception to his appeal waiver for claims of ineffective assistance.

*Id.* *See also Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007) ("[F]orcing a defendant to go to trial with an attorney with whom he has an irreconcilable conflict amounts to constructive denial of the Sixth Amendment right to counsel."); *United States v. Darrell*, 659 F. App'x 407, 408 (9th Cir. 2016) ("An irreconcilable conflict [sufficient for a motion to substitute] occurs 'only where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel.'" (quoting *Stenson*, 504 F.3d at 886)); *United States v. Brumer*, 528 F.3d 157, 161 (2d Cir. 2008) ("Although delay is generally a valid reason to deny a motion to substitute counsel, it is not necessarily valid where counsel is shown to be providing constitutionally ineffective representation.").

We agree that a district court's refusal to substitute counsel can violate a criminal defendant's right to effective assistance of counsel. Our precedents similarly suggest that this is the correct approach to the issue. For example, we previously recognized the possibility that a district court could impinge on a defendant's right to effective assistance of counsel by chaining him to his attorney, despite a total breakdown in their relationship. *United States v. Powell*, 847 F.3d 760, 779–80 (6th Cir. 2017) (denying defendant's timely motion to substitute counsel was an abuse of discretion where defendant demonstrated a complete breakdown in the attorney-client relationship; defendant's attorneys told him they "had not prepared for trial, were not equipped to represent him at trial, and would seek to withdraw if he did not accept the plea offer"). Indeed, turning to the facts of this case, we cannot ignore that the overlap between Hudson's motion to withdraw counsel and his ineffective assistance claims. Hudson moved for substitution of counsel *by reason of* his attorney's purported ineffectiveness. He wrote: "I would like to [file] a motion to withdraw my attorney . . . reasoning being, (1) ineffective assistance of counsel."

In support, he made a variety of allegations questioning his attorney's effectiveness, including that she was impossible to contact, made errors which negatively impacted his case, and misled and ultimately coerced him into signing the plea agreement. Hudson marshaled these facts to demonstrate to the district court that he had good cause to substitute counsel; and just as the *Rogers* court explained, if these facts gave rise to good cause, then Hudson lacked effective representation. *Rogers*, 839 F. App'x at 438. Nor can we elide the fact that the district court disposed of Hudson's motion to substitute counsel and his claim of ineffective assistance in one fell swoop, which further demonstrates how intertwined these claims were. Under these circumstances, we conclude that Hudson's claims fall within the ineffective assistance of counsel exception to his appellate waiver. We accordingly consider his appeal on the merits.

## III.

Once a defendant brings "'any serious dissatisfaction with counsel to the attention of the district court,'" the court has a duty to investigate into the source and nature of that dissatisfaction "regardless of whether the attorney is court-appointed or privately retained." *Benitez v. United States*, 521 F.3d 625, 632, 634 (6th Cir. 2008) (quoting *United States v. Iles*, 906 F.2d 1122, 1131–32 (6th Cir. 1990)); *cf. United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) ("[A]n element of [the right to counsel] is the right of a defendant who does not require appointed counsel to choose who will represent him."). The court may grant a motion to withdraw or for substitute counsel if there is a showing of good cause upon such further inquiry. *Benitez*, 521 F.3d at 632. Appellate courts reviewing the denial of such a motion generally consider four factors: "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) balancing the factors with the

public's interest in the prompt and efficient administration of justice." *United States v. Steele*, 919 F.3d 965, 973 (6th Cir. 2019) (quoting *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001)); *see also Martel v. Clair*, 565 U.S. 648, 663 (2012); *Benitez*, 521 F.3d at 632 (citing *Iles*, 906 F.2d at 1130 n.8). The decision whether to allow the substitution of counsel is committed to the sound discretion of the trial court and is entitled to deference absent an abuse of that discretion. *Martel*, 565 U.S. at 663–64; *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004).

Hudson argues that the court abused its discretion when it failed to inquire into his expressed dissatisfaction with counsel on two occasions. Specifically, he maintains that the court should have held colloquies with him after he raised complaints at his change of plea hearing and through his pro se letters filed post-plea.

**A.**

Hudson's arguments concerning the change of plea proceedings are unavailing. Despite Hudson's assertion that he made "complaints about counsel and expressed confusion about the proceedings and his case," he also repeatedly assured the magistrate judge that he was satisfied with his representation at that time. And while Hudson initially seemed confused about the charges contained in the indictment, the court took the time to elucidate them, and he later assured the court that his attorney completely advised him on the nature and meaning of all the charges contained in the indictment. He also contradicted that initial expression of doubt when he told the court he read the entire plea agreement concerning that indictment, spoke to his lawyer about it before signing it, and that he understood and agreed to all its terms. Similarly, Hudson stated, at first, that he was unfamiliar with the sentencing guidelines. But after a brief colloquy with the court, he recalled that his attorney discussed the guidelines with him and affirmed that he understood their implications for his case as well. And Hudson further suggested that he had not seen all the

evidence in the case but walked that statement back when the court questioned him on it. Hudson was under oath when he gave the district court these assurances and, under the circumstances, the court had no obligation to further inquire into Hudson's wavering complaints under *Benitez* and *Iles*. *E.g.*, *Iles*, 906 F.2d at 1131 (finding no abuse of discretion in denying substitution without a hearing where "[t]he district court reasonably believed that the problems had been solved;" noting further that a defendant must adequately "'show his hand'" to trigger further inquiry) (quoting *Brown v. United States*, 264 F.2d 363, 366 (D.C. Cir. 1959)).

Even if we were to address Hudson's arguments on this point more completely, they plainly lack merit. The magistrate judge dedicated significant time to ensuring that Hudson had received effective counsel during the change of plea hearing, and she offered him several opportunities to pause the proceedings and confer with his counsel. The magistrate judge also allowed Hudson's counsel and the Government's attorney to weigh in on this issue during the hearing. Hudson's appeal is denied on this ground.

**B.**

Hudson raises a colorable challenge to the district court's handling of his pro se motion to substitute counsel that he filed after his guilty plea was accepted. Balancing the four factors set out above, we hold that the district court was duty-bound to make further inquiry but failed to do so.

**1.** *Timeliness.* In assessing the timeliness prong, the temporal proximity between a motion to substitute counsel and a critical stage in the proceedings is paramount. *See, e.g.*, *United States v. Trevino*, 7 F.4th 414, 428–29 (6th Cir. 2021) (explaining that defendant's motion was untimely for being filed just thirteen days before trial, noting that "[w]e have often concluded that motions . . . filed so close to trial are untimely"); *United States v. Collado-Rivera*, 759 F. App'x 455, 466

(6th Cir. 2019) (finding motion timely for being filed about two months prior to sentencing hearing); *Powell*, 847 F.3d at 778, 780 (similarly focusing timeliness inquiry on motion for new counsel's proximity to critical stage in proceedings and finding motion was timely where it was made more than a month in advance of trial). This reflects well-established law that "[i]f the defendant's motion would 'necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference.'" *Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011) (quoting *United States v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009)). We may also consider the extent to which the defendant's request *could* have been timelier at all based on when the defendant's concerns about counsel actually arose. *Cobb v. Warden, Chillicothe Corr. Inst.*, 466 F. App'x 456, 460–61 (6th Cir. 2012) (finding motion timely despite being made on the morning of trial, because it "arose out of the state's supplemental [discovery that was turned over] provided only four days before the trial was set to begin"); *United States v. Evans*, 406 F. App'x 946, 947–48, 951 (6th Cir. 2011) (finding defendant "timely raised concern about [counsel's] representation after he came to believe he had been 'coerced' into pleading guilty"); *but see Trevino*, 7 F.4th at 429 (finding request untimely where defendant asserted dissatisfaction with the number of pretrial motions his attorney had lost, but those unfavorable rulings at issue were issued more than six months prior).

Hudson's request was timely. He entered his guilty plea on May 5, 2021, and the court accepted it on June 8, 2021. Hudson sent his first letter June 10, 2021. In his letter, Hudson alleged that counsel misled him into entering the plea agreement and that his concerns arose sometime after he had already signed it. Hudson elaborated on his complaints in a second pro se letter dated June 29, 2021. In that letter, Hudson reiterated that he was coerced to enter the guilty plea, said that his attorney had lied to him and would not do anything he asked her to do, and noted that he

had been unable to contact his attorney for an unspecified period of time. Hudson specifically mentioned that he recently learned about the First Step Act's anti-stacking amendment; he claimed that his plea agreement was defective because neither he nor his counsel took note of this provision during plea negotiations. Moreover, within days of the July 19 hearing regarding Hudson's first two letters, he followed up with a third letter in which he advised the court that his issues with counsel had not been resolved. Hudson's next court appearance was his sentencing hearing, which took place on November 19, 2021.

We find that Hudson promptly alerted the district court to his dissatisfaction with counsel. Hudson filed the motion well before sentencing, his next scheduled court appearance about five months later, such that granting his request would have required no last-minute continuance in the proceedings. *E.g.*, *Trujillo*, 376 F.3d at 606–07 (finding motion for new counsel made three days before trial untimely); *see also Trevino*, 7 F.4th at 429 (collecting cases); *Powell*, 847 F.3d at 778 (collecting cases). He also did so within days of learning of the potential legal issue that could affect his case. Thus, as in *Evans*, there was no significantly earlier time that he could have done so. *See* 406 F. App'x at 947–48, 951 (finding defendant's request timely where defendant raised concerns about being coerced by counsel into pleading guilty just two weeks after entering that plea). Based on our precedents—and considering Hudson's sentencing was not imminent and he wrote to the court soon after allegedly gaining cause to seek new counsel—the timeliness factor weighs in Hudson's favor.

**2. *Adequacy of the inquiry.*** The district court had a duty to investigate why Hudson sought to have his counsel removed. *Iles*, 906 F.2d at 1131. Our precedents instruct that courts "simply must allow a defendant the opportunity to explain the attorney-client conflict as he perceives it." *United States v. Marrero*, 651 F.3d 453, 465 (6th Cir. 2011) (citing *Vasquez*, 560

F.3d at 467; *United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006); *United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004)); *see also Powell*, 847 F.3d at 778–79. This requirement "not only aids in determining whether 'good cause' has been shown, but serves to ease the defendant's distrust, to preserve the integrity of the trial process, and to foster confidence in the jury verdict." *Iles*, 906 F.2d at 1131. Beyond inquiring into the defendant's concerns, the court should also make explicit findings to support its exercise of discretion in adjudicating the motion. *Benitez*, 521 F.3d at 635.

Hudson's pro se letters raised serious concerns about his counsel, including allegations that she was unresponsive and misled Hudson into entering his plea deal. The district court appropriately called a hearing to address Hudson's motion for substitute counsel. But it went on to conduct virtually no inquiry into Hudson's concerns. In fact, Hudson was afforded no opportunity to speak at the hearing—though he later revealed, in a third letter to the court, that he "wanted to speak while at court but was not sure if [he] could." The letter also informed the court that the hearing did not settle his issues with counsel. Yet at his next court date, which was his sentencing, there was no specific inquiry about these concerns. Because the court did not open the floor to any discussion, or otherwise engage Hudson or his attorney in any way, the record remains only partially developed and inadequate to determine whether his claims held any weight. It also did nothing to allay Hudson's concerns about his counsel or foster his trust in the criminal justice system. *Iles*, 906 F.2d at 1131. As such, the court's perfunctory dismissal of Hudson's concerns was insufficient. *See Collado-Rivera*, 759 F. App'x at 466 (finding court's inquiry "plainly inadequate" where it summarily denied defendant's motion to withdraw "without any inquiry or analysis"); *Cobb*, 466 F. App'x at 463 (same where court failed to "hear[], consider[], and discuss the reasons for the conflict" or make findings directly addressing the bases for defendant's

request); *Benitez*, 521 F.3d at 635–36 (finding abuse of discretion where district court failed to engage defendant in a colloquy).

Indeed, although the court generally referenced the contents of Hudson's letters in rendering its decision, it did not engage in the type of inquiry contemplated in *Benitez*. And it confusingly advised Hudson that he could move forward with retaining new counsel while at the same time entering an order denying his request. The proceedings below also appreciably stray from our precedents in which we found the court's inquiry to be satisfactory. *See, e.g.*, *Trevino*, 7 F.4th at 429 (finding a sufficient inquiry where the court received briefing and heard argument from both the defendant and his attorney); *Steele*, 919 F.3d at 974 (same where court engaged in colloquy with defendant); *United States v. Ammons*, 419 F. App'x 550, 553 (6th Cir. 2011) (same where the court provided defendant time to speak and attempted to ease defendant's distrust in his counsel through colloquy); *Vasquez,* 560 F.3d at 467 (same where the court held multiple lengthy discussions with defendant and his attorney about the issues at hand); *Chambers*, 441 F.3d at 447 (same where the court engaged defendant and counsel on their purported issues, spanning numerous pages of the transcript); *Saldivar-Trujillo*, 380 F.3d at 278 (same where the court permitted defendant, his counsel, and the Government to present evidence and arguments concerning defendant's complaint). The common thread in these cases is that the district court must at least minimally probe the basis for a defendant's complaint in order to discharge its obligations under the law. Because the court made no such inquiry during the proceedings below, this factor weighs decidedly in Hudson's favor.

Urging against this conclusion, the Government counters that the district court was not obligated to inquire into Hudson's motion. But each of its arguments in support of this position is unpersuasive.

15

First, the Government posits that the sole aim of any inquiry would have been to help the district court decide how to rule on Hudson's motion. But since the court simply decided to permit Hudson to retain new counsel, there was no need to speak to him about his concerns (e.g., his newfound suspicions that counsel coerced him into pleading guilty). Not so. As an initial matter, the Government cites no law supporting this position. And setting aside the question of whether the court in fact granted Hudson's motion—which, as discussed below, is not such a straightforward issue—this is an unduly narrow view of *why* courts must engage aggrieved defendants in a colloquy. As we have explained, the court's inquiry serves not only to probe good cause for substitution, but also to allay the defendant's concerns about counsel and preserve his confidence in the judicial system as a whole. *Iles*, 906 F.2d at 1131. The idea that it was appropriate for the concerns expressed in Hudson's letters to go essentially unaddressed minimizes the values at stake under the Sixth Amendment. The same could be said to the extent the Government argues that Hudson "was not harmed by any conceivable shortcoming" in the proceedings below. Moreover, if the district court deprived Hudson of his right to counsel of his choice, he need not show that the error prejudiced him. "Deprivation of that right is structural error that does not require a showing of prejudice or that the counsel defendant received was ineffective." *Powell*, 847 F.3d at 777 (citing *Gonzalez-Lopez*, 548 U.S. at 148); *see also Cobb*, 466 F. App'x at 460 (same); *Benitez*, 521 F.3d at 630 ("A violation of a defendant's right to counsel at a critical stage is a structural error and is therefore not subject to an analysis of whether the error was harmless or prejudicial.").

The Government also contends that the court was not required to make further inquiry because "the basis of [Hudson's] dissatisfaction [was] already clear" by the plain text of his letters. Yet, the cases cited in support of this argument are inapposite. In *United States v. Sullivan*,

431 F.3d 976 (6th Cir. 2005), the district court denied a pro se motion to substitute counsel after conducting a brief dialogue with defendant's counsel, but not with the defendant himself. *Id.* at 980, 980 n.4. We held there was no abuse of discretion given the circumstances of that case. *Id.* at 980–81. Specifically, defendant's counsel had previously filed a motion to withdraw on the eve of his client's jury trial. *Id.* at 981. During a hearing on that motion, the defendant "unequivocally indicated to the court that he wanted trial counsel to continue to represent him and that everything had been 'straightened out.'" *Id.* The trial thus proceeded. *Id.* Defendant's pro se motion came just four days later, meaning five days into trial; directly contradicted his prior representations; and otherwise set forth no basis for appointing new counsel. *Id.* We found that it was within the district court's discretion to dispose of the motion with only a cursory inquiry under those circumstances. But *Sullivan* is distinguishable from this case, which does not involve such stark back-and-forth ambivalence about Hudson's satisfaction with counsel. While Hudson did affirm his satisfaction with counsel during his change of plea hearing a month earlier, Hudson's letters communicated a newfound distrust of his attorney over one month post-plea and alerted the court, for the first time, that she was stonewalling him amid these recent concerns. From the time that he filed his motions, Hudson never contradicted those complaints or walked them back, as Sullivan did, such that the court could have summarily dismissed them. The two out-of-circuit cases the Government cites in support of its position are similarly distinct in key respects. *See United States v. Jones*, 795 F.3d 791, 797 (8th Cir. 2015) (finding no abuse of discretion despite lack of inquiry into substitution motion where, inter alia, "a stern command to defense counsel to meet with [defendant] sufficiently addressed [defendant's] communication frustrations"); *United States v. Smith*, 282 F.3d 758, 764–65 (9th Cir. 2002) (same where "the court had already entertained two previous substitution motions alleging 'lack of meaningful communication,' and was thoroughly

17

familiar with [defendant's] 'lack of communication' argument"). These cases do not excuse the court's failure to directly inquire into Hudson's complaints, as ample binding precedents require. *Martel*, 565 U.S. at 664 ("As all Circuits agree, courts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer.") (citing *Iles*, 906 F.2d at 1130).

   **3.** *Good cause*.   Third, we inquire into whether the purported conflict between Hudson and his counsel was "so great as to 'result in a total lack of communication preventing an adequate defense.'" *Vasquez*, 560 F.3d at 467–68 (quoting *United States v. Mooneyham*, 473 F.3d 280, 292 (6th Cir. 2007)). This requires a showing beyond trivial dissatisfaction or "communication with counsel which the defendant feels is unsatisfactory." *United States v. Jennings*, 83 F.3d 145, 149 (6th Cir. 1996); *see also United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999) (noting that "some lack of understanding or lack of confidence" in counsel is insufficient). Hudson must establish that "communication had truly broken down." *Williams*, 176 F.3d at 314; *see also Jennings*, 83 F.3d at 149 (6th Cir. 1996) (finding good cause for substitution did not exist absent a "complete communication breakdown").

   The district court made no express finding on this factor, and its failure to engage Hudson in a colloquy limits our insight into the situation. Nonetheless, we may review what record evidence we do have before us. *Cf. United States v. DeBruler*, 788 F. App'x 1010, 1013 (6th Cir. 2019) (reviewing defendant's original complaint about counsel for evidence of communication breakdown where lower court's inadequate inquiry "le[ft] the record rather sparse"). First, there is Hudson's letter dated June 29 stating that "I can't never get ahold of [my lawyer]" and suggesting he received inadequate counsel with respect to his plea agreement. Second, Hudson's July 24 letter reemphasized—among other things—that neither he nor his wife could reach his attorney, who he believed was lying to him and "working with the prosecutor." While Hudson's

18

counsel likely has her own version of the facts, the record is silent in that regard as the district court declined to inquire into any of Hudson's concerns. Without an adequate record on this point, it is difficult to determine whether, or the degree to which, this factor weighs in Hudson's favor. We find it necessary to remand for development of the record, such that a determination can be made on this prong in particular.

For its part, the Government highlights facts it believes demonstrate that Hudson's attorney-client relationship remained intact and that he lacked good cause for new counsel. Specifically, Hudson (1) retained the same counsel through sentencing after filing his complaints, even though the district court authorized him to retain different counsel, and (2) acknowledged at sentencing that he conferred with counsel about the PSR. However, the focus on these facts glosses over critical aspects of the record. To review, the court addressed Hudson's motion to substitute as follows during the July 19 hearing:

> [L]et's start with . . . Hudson saying that he wants a new attorney. . . . [Your lawyer] wasn't appointed by the Court. You hired her, and you picked her. It's not for me to interfere with your relationship with her. . . . [T]o the extent that your filings -- your letters might be construed as a motion to withdraw or a motion to appoint new counsel, <u>that's denied</u>. You've retained counsel. If you want a new lawyer, <u>go out and hire one</u>.

(Emphasis added). The court then issued a bench order simply stating that "Defendant's motion for new counsel is denied."

The court thus issued, at best, unclear directives, particularly from the perspective of a defendant moving pro se. Was Hudson permitted to hire new counsel, or was his motion for new counsel denied? Was the court declining to interfere with his attorney-client relationship, or was it inviting Hudson to fire the attorney and start anew? The Government's briefing underscores the potentially confusing nature of these proceedings. It implores us to distinguish this case from others which "involve appeal from lower court denials of a defendant's motion . . . to be

19

represented by new counsel," because the court here "actually authorized Hudson to substitute his current retained counsel with new retained counsel of his choice." But this case *does* involve a denial of Hudson's motion for new counsel. It does not square that Hudson somehow prevailed in his motion when the court explicitly denied it. The court offered no further clarification on these potentially mixed messages. To his credit, Hudson promptly filed a letter expressing confusion about the July 19 hearing—specifically regarding whether he was allowed to address the court on that date—while doubling down on his complaints about counsel. However, the court did not take any action on this letter until Hudson's next court date in November, more than three months later. Considering the foregoing facts, Hudson's continued relationship with counsel is not determinative here. It is unclear whether Hudson maintained counsel because his concerns were genuinely allayed and their relationship improved, or because he acquiesced to the court's ambiguous denial of his motion for new counsel. Further development of the record on remand will be enlightening on this point. We also note that the Southern District of Ohio's Local Criminal Rules require counsel to obtain leave of court prior to substituting an attorney of record. S.D. Ohio Crim. R. 83.4(b), https://www.ohsd.uscourts.gov/sites/ohsd/files//Local%20Rules%20Effective%202022-07-25.pdf (last accessed February 1, 2023). A layperson such as Hudson could have interpreted the court's rulings as withholding such leave. More thorough engagement with Hudson's motions during the proceedings below might have assuaged these uncertainties.

**4. *Interests of justice*.** Finally, the court must balance Hudson's right to the counsel of his choice against the public's interest in prompt and efficient administration of justice. *E.g.*, *Jones v. Bradshaw*, 46 F.4th 459, 475 (6th Cir. 2022); *Powell*, 847 F.3d at 779; *Cobb*, 466 F. App'x at 463 ("Our analysis of this fourth factor must consider *both* [defendant's] rights and the rights of the public.") (citing *Marrero*, 651 F.3d at 467) (emphasis in original); *see also, e.g.*, *Johnson*, 612 F.

App'x at 352 (noting that the focus of this inquiry is whether the district court properly balanced the relevant interests at the time it adjudicated the motion). The district court did not address this factor when it ruled on Hudson's motion, but the record sufficiently informs our analysis. We find that this case lacks the various indicia of undue delay commonly found to impinge on the public's interest in prompt and efficient justice. *See Steele*, 919 F.3d at 975 (weighing factor against defendant where granting his motion mid-trial would have "clearly upset the district court's ability to promptly and efficiently conduct trial" and resulted in a significant time and financial burden); *Sullivan*, 431 F.3d at 982 (explaining same); *United States v. Namer*, 149 F. App'x 385, 394 (6th Cir. 2005) (same). On the one hand, Hudson sought to onboard new counsel during the late stages of his criminal proceedings. Providing time for a new attorney to become acquainted with Hudson's case certainly might have delayed the administration of justice (i.e., his sentencing)—albeit to a limited extent, given that his underlying prosecution was a relatively straightforward one. Critically, however, Hudson's sentencing date had not been determined when he requested new counsel, and it ultimately took place several months later; accordingly, no last-minute continuance of sentencing would have been required here. Finally, this is not a case where Hudson ran through several appointed attorneys or contumaciously filed motions for new counsel throughout the proceedings, causing mounting delays. These facts suggest that the public's interest in justice would not have been disturbed in this case had Hudson's motion been granted. This reflects favorably on Hudson's appeal. *Marrero*, 651 F.3d at 467 (weighing factor in defendant's favor where granting the motion would not have caused additional delay in the proceedings). By contrast, Hudson's interest in retaining the counsel of his choice is a significant one protected by the Sixth Amendment. All things considered, the final prong of our inquiry weighs in Hudson's favor.

* * *

Balancing the foregoing factors, we conclude that the district court abused its discretion in summarily denying Hudson's request for substitute counsel. The court's duty to make further inquiry into Hudson's concerns existed regardless of whether he had appointed or privately retained counsel. This duty reflects the significant values at stake where a criminal defendant timely seeks a substitute attorney in good faith. Accordingly, we remand for the district court to determine whether substitution was appropriate at the time Hudson made his request—particularly given our finding that the record is inadequate on the good-cause prong. *See Martel*, 565 U.S. at 666 n.4 ("[If] the District Court had abused its discretion in denying [defendant's] substitution motion without inquiry[,] [t]he way to cure that error would have been to remand to the District Court to decide whether substitution was appropriate at the time of [defendant's] letter."); *Collado-Rivera*, 759 F. App'x at 467 (remanding under like circumstances); *Jennings*, 945 F.2d at 132 (same). If, after conducting the requisite inquiry, the court finds that Hudson's request lacked good cause, then further proceedings are unnecessary. However, if the court finds that Hudson *did* have good cause to replace his attorney at the time in question, he is entitled to new counsel to explore the merits of the claims set forth in his letters and for re-sentencing. *Collado-Rivera*, 759 F. App'x at 467; *Jennings*, 945 F.2d at 132. In that event, the court shall also determine whether Hudson requires appointed counsel for further proceedings.

## IV.

For the reasons stated above, we **VACATE** the district court's denial of Hudson's post-plea motion to substitute counsel and **REMAND** for the court to determine whether there was good cause to replace Hudson's counsel pursuant to his post-plea motion and subsequent requests.